IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RANDALL TODD MOONEY,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:24-cv-00304

LOGAN COUNTY COMMISSION, et al.,

        Defendants.

**PROPOSED FINDINGS & RECOMMENDATION**

This matter is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). Before this Court are *Motions for Judgment on the Pleadings* filed by Defendants Logan County Home Confinement (ECF No. 30) and Logan County Commission (ECF No. 32), respectively. For the reasons explained herein, it is respectfully **RECOMMENDED** that Defendants' motions be **GRANTED**.

**I.    BACKGROUND**

Plaintiff Randall Todd Mooney ("Plaintiff"), who is proceeding pro se and *in forma pauperis*, initiated this civil action on June 20, 2024. (ECF No. 2). Plaintiff alleges a civil-rights action pursuant to 42 U.S.C. § 1983 against eight named Defendants: (1) the Logan County Commission ("LCC"); (2) Logan County Sheriff Paul D. Clemons ("Clemons"); (3) Logan County Deputy Lieutenant Matt Carter ("Carter"); (4) Logan County Deputy

Corporal Nick Tucker ("Tucker"); (5) Logan County Deputy Corporal Coty Crum ("Crum"); (6) Logan County Home Confinement ("LCHC"); (7) Logan County Home Confinement Officer Marie Belcher ("Belcher"); and (8) Logan County K9 Deputy Timothy C. Johnson ("Johnson") (collectively, the "Defendants"). *Id.* at 1.

In his operative *Amended Complaint*, Plaintiff alleges that Defendants, Deputy Tucker and Deputy Crum, entered his home by force without a warrant on the morning of June 22, 2022. (ECF No. 21 at 3). While there, Deputy Tucker seized cash from the home and questioned Plaintiff after informing him that a tip from a confidential informant led them to believe that Plaintiff had a large amount of money in a freezer. *Id.* According to the *Complaint*, Deputy Tucker threatened to take Plaintiff to jail for marijuana possession when Plaintiff refused to answer questions. *Id.* Plaintiff alleges that the marijuana in his possession was his "legal medical marijuana." *Id.* Plaintiff alleges that the officers next dragged him from the home, dislocating Plaintiff's left shoulder and "causing permanent damage" to Plaintiff's right foot in the process. *Id.* Plaintiff was handcuffed and placed in Deputy Carter's vehicle, where he was questioned by Carter. *Id.* Plaintiff further alleges that, although he refused to consent to a search, Deputy Tucker and Deputy Crum conducted a warrantless search of his home anyway "and used the medicine that I legally procured against me and created false charges on me." *Id.* Ultimately, Plaintiff was transported to the regional jail where he was held for approximately ten days before being released on bond. *Id.* at 3-4.

After posting bond, Plaintiff alleges that he was returned to jail based upon a nonexistent detainer, and "held for appx 10 days illegally, filing multiple grievances for medical attention and wondering why I was being held after I posted bond." *Id.* at 4. Ultimately Plaintiff was informed that the detainer was a "clerical error," and he was

released. *Id.* Plaintiff then walked to Med Express to seek medical treatment for his injuries, and by the time he left Med Express, the home confinement office was already closed. *Id.* Plaintiff alleges that Defendant Belcher "procured a capias" in order to secure his arrest, despite being aware that Plaintiff was seeking medical treatment and was unable to walk to the home confinement office to report in time before it closed. *Id.* According to Plaintiff, Officer Belcher thus "used her power to illegally lock me up again." *Id.* Plaintiff was then jailed "for 15 more days based on lies and abuse of power by Marie Belcher." *Id.*

According to the *Complaint*, after his release Plaintiff filed complaints against Deputy Tucker, Deputy Crum, and Officer Belcher with the Sheriff. *Id.* Then, "[t]he very next morning [Officer Belcher] pulled the GPS on [Plaintiff's] home confinement box" and learned that Plaintiff had been to a storage unit. *Id.* According to Plaintiff, his supervising officer Jamie Sparks had given Plaintiff permission to do so. *Id.* Plaintiff alleges that, despite having permission to visit his storage unit, Officer Belcher informed Chief Deputy Fauci that Plaintiff "had been acting suspiciously." *Id.* According to Plaintiff, Officer Belcher did so "in retaliation because I filed [a] complaint" against her with the Sheriff. *Id.* The *Complaint* further alleges that Defendant, Deputy Johnson, "then used false information, along with the created information from [Officer] Belcher, and put it on an affidavit to search" the storage unit. *Id.* Plaintiff alleges that Deputy Johnson swore falsely on the affidavit that Plaintiff "did commit the crime of delivery of a controlled substance," despite the fact that Plaintiff had not been found guilty of this charge. *Id.*

Plaintiff alleges that, on or about August 12, 2022, Deputy Johnson then "executed the search warrant with falsified evidence and information." *Id.* After the search of the storage unit, "[t]hey returned with ZERO evidence of a crime being committed, yet over

3

"$100,000 worth of high end collectibles was destroyed." *Id*. Plaintiff alleges that the criminal case against him was ultimately dismissed. *Id*. Plaintiff alleges that, as a result of Defendants' actions, he has sustained physical injuries, emotional and psychological injuries, financial injuries, reputational injuries, and loss of liberty. *Id*. at 5. He seeks compensatory damages, punitive damages, and injunctive and declaratory relief. *Id*. at 6.

On September 20, 2024, each of the named Defendants filed a separate *Motion for Judgment on the Pleadings*. (ECF Nos. 30, 32, 34, 36, 38, 40, 42, 44). The undersigned then entered an *Order and Notice* setting forth a briefing schedule and informing Plaintiff of his rights and responsibilities in responding to the motions in accordance with the Fourth Circuit's opinion in *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff then filed timely responses on November 6, 2024. (ECF Nos. 54, 55, 56, 57, 58, 59, 60, 61). In turn, Defendants filed their reply briefs on November 13, 2024. (ECF Nos. 62, 63, 64, 65, 66, 67, 68, 69). Lastly, Plaintiff filed surreply briefs on November 25, 2024. (ECF Nos. 70-1, 70-2, 70-3, 70-4, 70-5, 70-6, 70-7, 70-8). As such, the motions are ripe for adjudication. The instant *Proposed Findings and Recommendation* takes up the motions filed by Defendants LCHC (ECF No. 30) and LCC (ECF No. 32), respectively.

## II. LEGAL STANDARD

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), this Court applies the same standard it applies to a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). That is, this Court accepts as true all the well-pleaded factual allegations in the complaint and draws all reasonable factual inferences in the non-movant's favor. *Pulte Home Corp. v. Montgomery Cty.*, 909 F.3d 685, 691 (4th Cir. 2018).

Pursuant to Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when, even if the facts alleged by the plaintiff are true, the complaint fails to state "a claim upon which relief can be granted" under the applicable law. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss under this minimal standard, the complaint only needs to set forth enough allegations of fact which, if true, suggest a clearly-identifiable legal claim for relief that "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be "plausible," the complaint does not need to include "detailed factual allegations." *Twombly*, 550 U.S. at 555. Further, a complaint should not be dismissed simply because the actual *proof* of those facts is improbable, because recovery is unlikely, or because the legal theory supporting the claim is not stated perfectly. *Id.*; *accord Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

On the other hand, a complaint may not simply rely on bald accusations, conclusory statements, or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). The U.S. Supreme Court has explained that if the complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is proper. *Twombly*, 550 U.S. at 555. In other words, it is fundamentally insufficient for a complaint to be made up of nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must plead facts which move the claim beyond the realm of mere possibility, and allow the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678.

When reviewing a defendant's motion to dismiss, the Court decides whether the complaint met this standard by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to "reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Where, as here, a plaintiff is proceeding "pro se"—or in other words, without legal counsel—the Court must "liberally construe" the complaint, meaning that it is held to a less stringent standard than if it had been drafted by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, when a potentially-viable complaint is deficient but its shortcomings can be remedied by amendment, the pro-se plaintiff should be given an opportunity to amend the complaint and "particularize" his or her allegations. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action."); *Coleman v. Peyton*, 370 F.2d 603, 604 (4th Cir. 1965) (reversing dismissal and explaining that "claims of legal substance should not be forfeited because of a failure to state them with technical precision"). Nevertheless, the requirement of liberal construction does not mean that the Court may ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990) (citing *Iqbal*, 556 U.S. at 685 (2009). Likewise, "a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("[E]ven a solicitous examination of the allegations reveals

little on which federal subject matter jurisdiction may be based.") (internal markings omitted). In other words, the mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him or her, or "conjure up questions never squarely presented" to the Court. *Randolph v. Baltimore City*, 14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech*, 588 Fed. App'x 219 (4th Cir. 2014) (citations omitted) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). *See also Weller*, 901 F.2d at 391 (affirming dismissal where the "complaint fail[ed] to allege anything that even remotely suggests a factual basis for the claim," and explaining that "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate"). Consequently, the Court may deny leave to amend when "the amendment would be futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

### III.    DISCUSSION

#### A.    LCHC's *Motion for Judgment on the Pleadings* (ECF No. 30)

In its *Motion for Judgment on the Pleadings* (ECF No. 30), Defendant LCHC argues that Plaintiff's claims against it should be dismissed, because "Plaintiff asserts no allegations or claims against [LCHC] itself." (ECF No. 31 at 1). Nor has Plaintiff "identified [any] policy or custom to support any claim against [LCHC]." *Id.* at 5. Rather, in support of his § 1983 claim against Defendant LCHC, Plaintiff alleges that Officer Belcher, an

7

employee of LCHC, violated Plaintiff's constitutional rights. Defendant LCHC argues that liability against it cannot arise from its employee's conduct under the circumstances, because "[t]he Fourth Circuit has held that "[l]iability under § 1983 of a local government for a constitutional violation cannot be premised solely upon the doctrine of respondeat superior." *Id.* at 3 (citing *Cortez v. Prince George's Cty. Md.*, 31 Fed. App'x 123, 128 (4th Cir. 2002)).

In his response brief, Plaintiff argues that his *Amended Complaint* "presents detailed allegations of institutional failures that satisfy the requirements for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny." (ECF No. 54 at 1). Plaintiff asserts generally, without pointing to his *Amended Complaint*, that his pleading "establishes deliberate indifference through failure to train," namely, "lack of training on due process requirements; inadequate procedures for warrant verification; insufficient supervision of officers; [and] disregard for constitutional rights." *Id.* at 2. Likewise, Plaintiff asserts generally, without pointing to his *Amended Complaint*, that his pleading "establishes deliberate indifference through [a] pattern of violations," namely, "multiple instances of fabricated charges; repeated procedural violations; [and] ongoing retaliatory conduct." *Id.* Further, Plaintiff makes the conclusory assertion that the pleading requirement is satisfied under *Monell* because it "demonstrat[es] policymaker awareness" since "[u]nder W. Va. Code § 62-11B-7a, LCHC exercises final policymaking authority for home confinement operations . . . [and] [t]heir actions represent official policy under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)." *Id.* at 3. Again, however, Plaintiff does not point to any portion of his *Amended Complaint* to support his contention of "policymaker awareness." *See id.*

In its reply brief, LCHC points out that Plaintiff's "blanket" reference to "customs

8

and policies" in his response does not correspond to any particular allegations in his *Amended Complaint*. (ECF No. 69 at 2) (citing *Mincey v. World Savings Bank, FSB*, 614 F. Supp.2d 610, 625 (D.S.C. 2008) ("A memorandum in opposition or response . . . cannot remedy the defects in a party's complaint.'")). LCHC argues that "Plaintiff asserts no *Monell* claim in his *Amended Complaint* whatsoever," because Plaintiff's pleading "contains no allegation that Plaintiff was harmed by an LCHC policy or custom," and further "identifies no LCHC policy or custom." *Id.* LCHC argues that the allegations in the *Amended Complaint* "were directed at individuals—not the LCHC." (ECF No. 69 at 3). Moreover, the *Amended Complaint* "only identifies one LCHC employee, Marie Belcher," and "does not plead that Ms. Belcher had final policymaking authority[.]" *Id.* Rather, as a home confinement officer, Ms. Belcher was "subject to the supervision of the sheriff" under W. Va. Code § 62-11B-7a. *Id.*

Moreover, LCHC argues that Officer Belcher's alleged misconduct on one occasion "constitutes no policy or custom." *Id.* According to LCHC, "Plaintiff does not allege in his Amended Complaint that Ms. Belcher or anyone else at LCHC failed to train any LCHC employee or committed some other deliberate omission that amounts to a custom or policy." *Id.* at 4. Rather, "Plaintiff's *Amended Complaint* seems to allege that LCHC is liable for the actions of its employee, Ms. Belcher." *Id.* LCHC concludes that dismissal is proper because "Plaintiff's *Amended Complaint* and *Response* allege no express policy; makes no allegation that any particular person at LCHC had final policymaking authority; alleges no deliberate omission on part of the LCHC; and pleads no facts evincing a 'persistent and widespread' practice to constitute any "custom or usage with the force of law.'" *Id.* at 3-4.

In his surreply brief, Plaintiff argues that LCHC "fundamentally misapprehends

9

both the constitutional framework for municipal liability and the extensive factual allegations in Plaintiff's *Amended Complaint*." (ECF No. 70-6). According to Plaintiff, LCHC's argument "ignores . . . detailed allegations[.]" *Id.* at 3. However, Plaintiff fails to point to *any* of the allegations in his *Amended Complaint* to support his position. *See id.* Instead, Plaintiff merely sets forth an extensive list of legal authority. *See id.* For instance, Plaintiff cites to *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987), for the principle that a custom may be "proven by persistent practices." (ECF No. 70-6 at 3). However, Plaintiff fails to point to any allegations in his *Amended Complaint* or to explain how those allegations constitute the requisite "persistent practices."

It is well established that liability under § 1983 cannot be predicated on a theory of *respondeat superior*. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A plaintiff may assert claims against local government entities under § 1983 for the unconstitutional actions of their employees, therefore, only "where these harms are directly attributable to the entity . . . through an official policy or custom." *Sosa v. Hill*, No. 1:24-cv-499, 2025 WL 864291, at *10 (E.D. Va. Mar. 19, 2025) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). A plaintiff may establish a municipal policy or custom by looking to: (1) express ordinances and regulations; (2) affirmative decisions of final policy makers; (3) omissions by final policy makers that "manifest deliberate indifference to the rights of citizens," or (4) practices that are so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). "The challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." *Carter*, 164 F.3d at 218. "Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific

10

injury or that it was the moving force behind her deprivation." *Id.*

Upon review of the *Amended Complaint*, the undersigned **FINDS** that Plaintiff has failed to state a plausible claim for municipal liability against LCHC. The *Amended Complaint* does not contain allegations wherein the harms are directly attributable to LCHC; instead, Plaintiff alleges unconstitutional acts by LCHC's employee, Officer Belcher. Simply put, Plaintiff does not allege Defendant LCHC allowed unconstitutional actions to take place that were so persistent and widespread as to constitute a custom or usage. *See McCormick v. Town of Summerville*, 2:22-cv-257, 2022 WL 17546855, at *2 (D.S.C. Dec. 8, 2022). Nor did Plaintiff plead the existence of any official policy or custom that is fairly attributable to LCHC that itself proximately caused the deprivation of rights. *See Harts v. Calvert Cty. Sheriff*, 22-cv-3192, 2024 WL 944321, at *4 (D. Md. Mar. 5, 2024). Plaintiff's argument in his response brief—that his pleading "establishes deliberate indifference through [a] pattern of violations," namely, "multiple instances of fabricated charges; repeated procedural violations; [and] ongoing retaliatory conduct"—constitutes precisely the type of "scattershot accusations of unrelated constitutional violation" that courts have found to be inadequate to state a claim under *Monell*. *See Sosa*, 2025 WL 864291, at *10.

In summary, Plaintiff has simply failed to adequately plead a claim for municipal liability against LCHC. While a pro-se plaintiff's pleadings must be construed liberally, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him, or "conjure up questions never squarely presented" to the Court. *Randolph*, 2014 WL 5293708, at *1. As such, the undersigned respectfully recommends that LCHC's *Motion for Judgment on the Pleadings* (ECF No. 30) be **GRANTED**, and Plaintiff's claims against LCHC be **DISMISSED**.

B. **LCC's *Motion for Judgment on the Pleadings* (ECF No. 32)**

The parties raise similar arguments with respect to LCC's *Motion for Judgment on the Pleadings* (ECF No. 32), wherein Defendant LCC seeks dismissal of Plaintiff's claims against it on the grounds that "Plaintiff asserts no allegations or claims against the Logan County Commission" itself. (ECF No. 33 at 1). In particular, LCC asserts that Plaintiff "has pled no facts to support any claim against Defendant [LCC] . . . [and] has identified no policy or custom to support any claim against the [LCC]." *Id*. at 5.

In response, Plaintiff points to a number of different issues outside of the scope of his *Amended Complaint*, including his assertion that he "possesses an audio recording that provides direct evidence of," *inter alia*, a "[c]ustom of failing to supervise county employees[.]" (ECF No. 57 at 2). With respect to the *Amended Complaint* itself, however, Plaintiff can point to only two relevant allegations. *See id*. First, Plaintiff alleges in his *Amended Complaint* that Deputy Tucker and Deputy Crum's warrantless search of Plaintiff's home on June 22, 2022 was the second time in four years that Logan County officers searched his home without a warrant. (ECF No. 21 at 3). Second, Plaintiff alleges in his *Amended Complaint* that Sheriff Clemons admitted to Plaintiff that "he had many of the same complaints against these same officers but no one would ever stand up and press it." *Id*. at 4. Plaintiff argues in his response brief that these allegations demonstrate "systemic failures" as well as a "custom and practice" of deflecting reports of violations. (ECF No. 57 at 3). Plaintiff concludes that his *Amended Complaint* "demonstrate[s] that the Commission maintained policies and customs that directly led to constitutional violations, and showed deliberate indifference to known problems." *Id*. at 4. As a result, Plaintiff argues that LCC's motion should be denied. *Id*.

In its reply brief, LCC reiterates its argument that Plaintiff "failed to plead any

12

policy or custom that caused any injury to support a *Monell* claim." (ECF No. 68 at 2). LCC argues that Plaintiff cannot satisfy the "municipal custom" standard unless he alleges that the practice at issue "is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 3 (quoting *Carter*, 146 F.3d at 218). LCC concludes that "Plaintiff has pled no facts showing such a custom or usage." *Id.* Rather, LCC argues that Plaintiff "seeks to impose liability on the Commission . . . [via] respondeat superior, over Home Confinement and the Sheriff." *Id.* at 4. Because *respondeat superior* does not lie in a § 1983 action, LCC argues that Plaintiff cannot state a claim against it based upon the acts of others. *Id.* at 5.

In his surreply brief, Plaintiff argues the *Amended Complaint* specifically alleges express policies and customs, including "systematic deflection of citizen complaints, failure to implement oversight mechanisms, [and a] pattern of constitutional violations[.]" (ECF No. 70-7 at 2). Plaintiff concludes that "[t]he evidence, including the audio recording and pattern of similar incidents, more than satisfies the pleading requirements for municipal liability." *Id.* at 5.

As set forth *supra*, only two allegations in Plaintiff's *Amended Complaint* are sufficiently relevant to the question of municipal liability: a prior warrantless search of Plaintiff's home on one other occasion by Logan County police, and Sheriff Clemons's alleged admission that he had "many of the same complaints against these same officers but no one would ever stand up and press it." (ECF No. 21 at 4).

As discussed in connection with LCHC's motion, *supra*, a plaintiff may establish a municipal policy or custom by looking to: (1) an express policy, such as a written ordinance or regulation; (2) the decisions of a person with final policymaking authority; (3) an omission, such as a failure to properly train officers, that "manifest[s] deliberate

13

indifference to the rights of citizens[;]" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Jackson v. Town of Farmville*, 3:22-cv-729, 2023 WL 3871697, at *5 (E.D. Va. June 7, 2023). *See also Carter*, 164 F.3d at 218 (citing *Monell*, 436 U.S. at 690-91).

With respect to the first "option," an express policy, neither of these allegations in the *Amended Complaint* identify a specific policy; in fact, nowhere in the *Amended Complaint* does Plaintiff do so. Nor does Plaintiff provide any "details as to what the policy covers or contains." *See Sosa*, 2025 WL 864291, at *24. Accordingly, and in the absence of any details whatsoever concerning LCC's purported policy, the undersigned finds that Plaintiff has failed to state a *Monell* claim based on an express policy.

With respect to the third option, Plaintiff merely makes conclusory allegations and formulaic recitation of the elements of a failure-to-train theory, without the requisite plausible facts to support such a claim. *See Jackson*, 2023 WL 3871697, at *7. Specifically, a plaintiff must allege "sufficient facts regarding the adequacy of training" itself. *Green v. Mills*, 3:19-cv-906, 2020 WL 2850177, at *10 (E.D. Va. June 2, 2020). Plaintiff's *Amended Complaint* falls far short of this standard. Accordingly, the undersigned finds that Plaintiff has failed to state a *Monell* claim based on failure to train.

The remaining options all centrally concern a widespread pattern of conduct. Relevant to the case at hand, the Fourth Circuit has explained that *Monell* liability may be established under a condonation or ratification theory, wherein plaintiffs must show that the government entity failed to correct or stop (and thereby condoned) a "widespread pattern of unconstitutional conduct." *Sosa*, 2025 WL 864291, at *11 (quoting *Owens v. Baltimore City State's Atty's Off.*, 767 F.3d 379, 402 (4th Cir. 2014)). However, "[t]he Fourth Circuit has noted that prevailing under a condonation theory is no easy task," and

14

it "requires showing a persistent and widespread practice of sufficient duration and frequency to indicate that policymakers (1) had either actual or constructive notice of unconstitutional conduct by their officers and (2) failed to correct it due to deliberate indifference." *Sosa*, 2025 WL 864291, at *11 (quoting *Owens*, 767 F.3d at 402). Courts will not infer a persistent and widespread practice merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees. *Sosa*, 2025 WL 864291, at *11 (citing *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)). Nor will "isolated incidents of unconstitutional conduct" establish such a custom or practice; rather, "numerous particular instances" of unconstitutional conduct are required. *Id.* (citing *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003)).

As to the two warrantless searches of Plaintiff's home, the undersigned finds that this allegation fails to establish with specificity any widespread policy or custom of a specific constitutional violation, let alone a set of practices "so permanent and well settled as to constitute a custom or usage with the force of law." *Carter*, 164 F.3d at 218. First, a warrantless search, standing alone, does not constitute a per se constitutional violation, and the *Amended Complaint* is devoid of sufficient factual allegations to support an inference that either search violated the Fourth Amendment. Moreover, even if these searches were unconstitutional, it is well-established that allegations of one or two discrete prior instances is insufficient to establish a custom or practice. *See Davis v. Lilly*, 2023 WL 6565288, at *5 (W.D. Va. Oct. 10, 2023); *Robinson v. Baltimore Cnty.*, 2022 WL 3577267, at *6 (D. Md. Aug. 19, 2022).

Plaintiff's allegation regarding Sheriff Clemons's admission presents a closer question. Plaintiff alleges that he reported the allegedly unconstitutional misconduct of Officers Tucker, Crum, and Belcher to Sheriff Clemons, and that Sheriff Clemons was

aware of many of the same complaints against these officers. However, Plaintiff does not allege that any official ratification took place by Sheriff Clemons or any other LCC official; rather, by Plaintiff's own account, he was the "first" to "ever stand up and press it." (ECF No. 21 at 4). Without more, Plaintiff has simply alleged, at most, isolated incidents of unconstitutional conduct that is insufficient to state a claim for municipal liability under *Monell*. Simply put, Plaintiff fails to establish with specificity any widespread policy or custom of constitutional violations by LCC, let alone a set of practices "so permanent and well settled as to constitute a custom or usage with the force of law." *Carter*, 164 F.3d at 218. Accordingly, the undersigned respectfully recommends that LCC's *Motion for Judgment on the Pleadings* (ECF No. 32) be **GRANTED**, and Plaintiff's claims against LCC be **DISMISSED**.

## IV.   RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant Logan County Home Confinement's *Motion for Judgment on the Pleadings* (ECF No. 30) be **GRANTED**, Defendant Logan County Commission's *Motion for Judgment on the Pleadings* (ECF No. 32) be **GRANTED**, and Plaintiff's claims against these two of the eight named Defendants in this civil action be dismissed.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such

objection; further, pursuant to Rule 6(d), any unrepresented party shall have an additional three (3) days after this fourteen-day period if service is made via U.S. Mail. Extension of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Volk, and to each opposing party—except that, if any opposing party is represented by counsel, that party's copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, and to transmit a copy to counsel of record and any unrepresented party.

ENTERED: June 20, 2025

Dwane L. Tinsley
United States Magistrate Judge