IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RANDALL TODD MOONEY,

           Plaintiff,

v.                                        CIVIL ACTION NO.  2:24-cv-00304

LOGAN COUNTY COMMISSION, et al.,

           Defendants.

**PROPOSED FINDINGS & RECOMMENDATION**

This matter is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). Before this Court are *Motions for Judgment on the Pleadings* filed by Defendants, Logan County Sheriff Paul D. Clemons (ECF No. 38) and Logan County Deputy Lieutenant Matt Carter (ECF No. 40), respectively. For the reasons explained herein, it is respectfully **RECOMMENDED** that Defendants' motions be **GRANTED**.

**I.    BACKGROUND**

Plaintiff Randall Todd Mooney ("Plaintiff"), who is proceeding pro se and *in forma pauperis*, initiated this civil action on June 20, 2024. (ECF No. 2). Plaintiff alleges a civil-rights action pursuant to 42 U.S.C. § 1983 against eight named Defendants: (1) the Logan County Commission ("LCC"); (2) Logan County Sheriff Paul D. Clemons ("Clemons"); (3) Logan County Deputy Lieutenant Matt Carter ("Carter"); (4) Logan County Deputy

Corporal Nick Tucker ("Tucker"); (5) Logan County Deputy Corporal Coty Crum ("Crum"); (6) Logan County Home Confinement ("LCHC"); (7) Logan County Home Confinement Officer Marie Belcher ("Belcher"); and (8) Logan County K9 Deputy Timothy C. Johnson ("Johnson") (collectively, the "Defendants"). *Id*. at 1.

In his operative *Amended Complaint*, Plaintiff alleges that Defendants, Deputy Tucker and Deputy Crum, entered his home by force without a warrant on the morning of June 22, 2022. (ECF No. 21 at 3). While there, Deputy Tucker seized cash from the home and questioned Plaintiff after informing him that a tip from a confidential informant led them to believe that Plaintiff had a large amount of money in a freezer. *Id*. According to the *Complaint*, Deputy Tucker threatened to take Plaintiff to jail for marijuana possession when Plaintiff refused to answer questions. *Id*. Plaintiff alleges that the marijuana in his possession was his "legal medical marijuana." *Id*. Plaintiff alleges that the officers next dragged him from the home, dislocating Plaintiff's left shoulder and "causing permanent damage" to Plaintiff's right foot in the process. *Id*. Plaintiff was handcuffed and placed in Deputy Carter's vehicle, where he was questioned by Carter. *Id*. Plaintiff further alleges that, although he refused to consent to a search, Deputy Tucker and Deputy Crum conducted a warrantless search of his home anyway "and used the medicine that I legally procured against me and created false charges on me." *Id*. Ultimately, Plaintiff was transported to the regional jail where he was held for approximately ten days before being released on bond. *Id*. at 3-4.

After posting bond, Plaintiff alleges that he was returned to jail based upon a nonexistent detainer, and "held for appx 10 days illegally, filing multiple grievances for medical attention and wondering why I was being held after I posted bond." *Id*. at 4. Ultimately Plaintiff was informed that the detainer was a "clerical error," and he was

released. *Id.* Plaintiff then walked to Med Express to seek medical treatment for his injuries, and by the time he left Med Express, the home confinement office was already closed. *Id.* Plaintiff alleges that Defendant Belcher "procured a capias" in order to secure his arrest, despite being aware that Plaintiff was seeking medical treatment and was unable to walk to the home confinement office to report in time before it closed. *Id.* According to Plaintiff, Officer Belcher thus "used her power to illegally lock me up again." *Id.* Plaintiff was then jailed "for 15 more days based on lies and abuse of power by Marie Belcher." *Id.*

According to the *Complaint*, after his release Plaintiff filed complaints against Deputy Tucker, Deputy Crum, and Officer Belcher with the Sheriff. *Id.* Then, "[t]he very next morning [Officer Belcher] pulled the GPS on [Plaintiff's] home confinement box" and learned that Plaintiff had been to a storage unit. *Id.* According to Plaintiff, his supervising officer Jamie Sparks had given Plaintiff permission to do so. *Id.* Plaintiff alleges that, despite having permission to visit his storage unit, Officer Belcher informed Chief Deputy Fauci that Plaintiff "had been acting suspiciously." *Id.* According to Plaintiff, Officer Belcher did so "in retaliation because I filed [a] complaint" against her with the Sheriff. *Id.* The *Complaint* further alleges that Defendant, Deputy Johnson, "then used false information, along with the created information from [Officer] Belcher, and put it on an affidavit to search" the storage unit. *Id.* Plaintiff alleges that Deputy Johnson swore falsely on the affidavit that Plaintiff "did commit the crime of delivery of a controlled substance," despite the fact that Plaintiff had not been found guilty of this charge. *Id.*

Plaintiff alleges that, on or about August 12, 2022, Deputy Johnson then "executed the search warrant with falsified evidence and information." *Id.* After the search of the storage unit, "[t]hey returned with ZERO evidence of a crime being committed, yet over

3

$100,000 worth of high end collectibles was destroyed." *Id*. Plaintiff alleges that the criminal case against him was ultimately dismissed. *Id*. Plaintiff alleges that, as a result of Defendants' actions, he has sustained physical injuries, emotional and psychological injuries, financial injuries, reputational injuries, and loss of liberty. *Id*. at 5. He seeks compensatory damages, punitive damages, and injunctive and declaratory relief. *Id*. at 6.

On September 20, 2024, each of the named Defendants filed a separate *Motion for Judgment on the Pleadings*. (ECF Nos. 30, 32, 34, 36, 38, 40, 42, 44). The undersigned then entered an *Order and Notice* setting forth a briefing schedule and informing Plaintiff of his rights and responsibilities in responding to the motions in accordance with the Fourth Circuit's opinion in *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff then filed timely responses on November 6, 2024. (ECF Nos. 54, 55, 56, 57, 58, 59, 60, 61). In turn, Defendants filed their reply briefs on November 13, 2024. (ECF Nos. 62, 63, 64, 65, 66, 67, 68, 69). Lastly, Plaintiff filed surreply briefs on November 25, 2024. (ECF Nos. 70-1, 70-2, 70-3, 70-4, 70-5, 70-6, 70-7, 70-8). As such, the motions are ripe for adjudication. The instant *Proposed Findings and Recommendation* takes up the motions filed by Defendants Clemons (ECF No. 38) and Carter (ECF No. 40), respectively.

## II. **LEGAL STANDARD**

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), this Court applies the same standard it applies to a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). That is, this Court accepts as true all the well-pleaded factual allegations in the complaint and draws all reasonable factual inferences in the non-movant's favor. *Pulte Home Corp. v. Montgomery Cty.*, 909 F.3d 685, 691 (4th Cir. 2018).

4

Pursuant to Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when, even if the facts alleged by the plaintiff are true, the complaint fails to state "a claim upon which relief can be granted" under the applicable law. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss under this minimal standard, the complaint only needs to set forth enough allegations of fact which, if true, suggest a clearly-identifiable legal claim for relief that "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be "plausible," the complaint does not need to include "detailed factual allegations." *Twombly*, 550 U.S. at 555. Further, a complaint should not be dismissed simply because the actual *proof* of those facts is improbable, because recovery is unlikely, or because the legal theory supporting the claim is not stated perfectly. *Id.*; *accord Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

On the other hand, a complaint may not simply rely on bald accusations, conclusory statements, or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). The U.S. Supreme Court has explained that if the complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is proper. *Twombly*, 550 U.S. at 555. In other words, it is fundamentally insufficient for a complaint to be made up of nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must plead facts which move the claim beyond the realm of mere possibility, and allow the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678.

When reviewing a defendant's motion to dismiss, the Court decides whether the complaint met this standard by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to "reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Where, as here, a plaintiff is proceeding "pro se"—or in other words, without legal counsel—the Court must "liberally construe" the complaint, meaning that it is held to a less stringent standard than if it had been drafted by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, when a potentially-viable complaint is deficient but its shortcomings can be remedied by amendment, the pro-se plaintiff should be given an opportunity to amend the complaint and "particularize" his or her allegations. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action."); *Coleman v. Peyton*, 370 F.2d 603, 604 (4th Cir. 1965) (reversing dismissal and explaining that "claims of legal substance should not be forfeited because of a failure to state them with technical precision"). Nevertheless, the requirement of liberal construction does not mean that the Court may ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990) (citing *Iqbal*, 556 U.S. at 685 (2009). Likewise, "a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("[E]ven a solicitous examination of the allegations reveals

little on which federal subject matter jurisdiction may be based.") (internal markings omitted). In other words, the mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him or her, or "conjure up questions never squarely presented" to the Court. *Randolph v. Baltimore City*, 14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech*, 588 Fed. App'x 219 (4th Cir. 2014) (citations omitted) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). *See also Weller*, 901 F.2d at 391 (affirming dismissal where the "complaint fail[ed] to allege anything that even remotely suggests a factual basis for the claim," and explaining that "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate"). Consequently, the Court may deny leave to amend when "the amendment would be futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

### III. DISCUSSION

#### A. Clemons's *Motion for Judgment on the Pleadings* (ECF No. 38)

In his *Motion for Judgment on the Pleadings* (ECF No. 38), Sheriff Clemons argues that dismissal is proper because, as a government employee, he is only liable for his own misconduct—and the *Amended Complaint* sets forth no allegations which could support an inference that he personally committed any constitutional violations. (ECF No. 39 at 3) (citing *Iqbal*, 556 U.S. at 676). Further, Sheriff Clemons argues that the

7

doctrine of qualified immunity shields him from liability, because Plaintiff "pleads no facts to support any claim" against him, and "has failed to identify any clearly established law that Defendant Clemons violated" in support of his § 1983 claims. *Id.* at 6.

In his response brief, Plaintiff argues that supervisory liability applies "because the *Amended Complaint* presents substantial evidence of [Sheriff Clemons's] deliberate indifference to and active pa1ticipation in constitutional violations, including but not limited to his knowing tolerance of Deputy Crum's documented pe1jury and abuse of power." (ECF No. 59 at 1). In support of his argument, Plaintiff asserts that "[t]he evidence demonstrates . . . (1) a pattern of deliberate indifference to widespread misconduct; (2) failure to supervise and discipline deputies despite known violations; (3) active facilitation of retaliatory conduct; and (4) continued endorsement of Deputy Crum's perjured testimony and abuse of authority." *Id.* Plaintiff further alleges that an unspecified audio recording of Sheriff Clemons will show him "admitting knowledge of Deputies Tucker and Crum 'robbing people for years[.]'" *Id.* at 2. According to Plaintiff, this constitutes the requisite "evidence of a pattern of similar constitutional violations by untrained employees," as well as Sheriff Clemons's "continued inaction in the face of documented widespread abuses[.]" *Id.* Lastly, Plaintiff argues that qualified immunity does not apply when a supervisor knowingly permits constitutional violations by subordinates. *Id.* at 5.

In his reply brief, Sheriff Clemons argues that Plaintiff cannot overcome the deficiencies in his pleading by advancing new theories that are "no where stated in his *Amended Complaint*, namely supervisory liability." (ECF No. 62 at 1). Further, Sheriff Clemons argues that, "[e]ven considering these new allegations . . . [they] fail to support a claim" nonetheless. *Id.* at 1-2. Relying on the Fourth Circuit's opinion in *King v. Riley*,

8

Sheriff Clemons emphasizes that "a supervisor's 'mere knowledge' that his subordinates are engaged in unconstitutional conduct is not enough." *King v. Riley*, 76 F.4th 259, 269 (4th Cir. 2023). Because Plaintiff has alleged nothing more than "mere knowledge" of rumors of misconduct, Sheriff Clemons argues that the *Amended Complaint* fails to allege the requisite ratification to meet the supervisory-liability standard under § 1983. (ECF No. 62 at 2).

In his surreply brief, Plaintiff argues that Clemons "fundamentally misapprehends both the nature of supervisory liability and the scope of qualified immunity protection in the context of documented constitutional violations." (ECF No. 70-3). Without pointing to any particular portion of the *Amended Complaint*, Plaintiff argues vaguely that his pleading "establishes knowledge through multiple avenues recognized by controlling precedent[.]" *Id.* at 2. Without elaboration, Plaintiff then merely sets forth a list of legal authority before concluding that his pleading "properly establishes supervisory liability through: (1) Direct evidence of Sheriff Clemons' knowledge of constitutional violations; (2) Pattern evidence of systematic misconduct; (3) Failure to take corrective action despite knowledge; (4) Active facilitation of continuing violations; [and] (5) Direct causal connection between supervision and violations." *Id.* at 7.

When a state official is sued pursuant to 42 U.S.C. § 1983 in his supervisory capacity, liability arises where "(1) he knew that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) his response showed deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between his inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, even assuming that the doctrine of qualified immunity did not bar Plaintiff's suit against Sheriff Clemons, dismissal is proper nonetheless. Contrary to the argument in Plaintiff's briefing on this motion, the *Amended Complaint* is devoid of any plausible allegations to meet the elements of supervisory liability. In his *Motion for Judgment on the Pleadings* (ECF No. 38), Sheriff Clemons points out that the entirety of Plaintiff's allegations concerning acts taken by Clemons in the *Amended Complaint* consist of only three assertions. (ECF No. 39 at 2). First, Plaintiff alleges that after he made complaints against Tucker, Crum, and Belcher, "Sheriff Clemons admitted he had many of the same complaints against these same officers but no one would ever stand up and press it." (ECF No. 21 at 4). Second, Plaintiff alleges that, after he told Sheriff Clemons that he "offered to be the first" to "stand up and press" complaints against Tucker, Crum, and Belcher, "[t]he Sheriff then informed Marie Belcher of the complaint I filed against her." *Id.* Lastly, after criminal charges against Plaintiff were dismissed, Plaintiff spoke with the Sheriff and informed him "of the pending lawsuit." *Id.* None of these allegations state a plausible "pattern . . . of systematic misconduct," "failure to take corrective action," or any "direct causal connection between supervision and violations" as Plaintiff claims. At most, these allegations merely give rise to an inference that Sheriff Clemons knew of complaints of misconduct by his officers.

The Fourth Circuit explained in *Shaw* that "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm" in satisfaction of the first element of a supervisory-liability claim "requires evidence that the conduct is widespread," and establishing "deliberate indifference to or tacit authorization" in satisfaction of the second element likewise requires "demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Shaw*, 13 F.3d at 799. Simply put, the *Amended Complaint* fails to

allege sufficient facts to support a plausible claim that the officers had behaved in such a manner in the past that their conduct was "widespread." Plaintiff's vague allusions to other complaints is far too formulaic and threadbare to sufficiently state a claim. *See Sosa v. Hill*, 1:24-cv-499, 2025 WL 864291, at *16 (E.D. Va. Mar. 19, 2025) (rejecting supervisory-liability claim when the plaintiff "provide[d] no examples" of widespread misconduct).

Nor do any of the allegations in the *Amended Complaint* give rise to a plausible inference that Sheriff Clemons engaged in "continued inaction" in response—or, in other words, that Sheriff Clemons chose to do nothing to remedy what he knew to be a widespread problem. To the contrary, Plaintiff's own allegations indicate that he was "the first" to "stand up and press" complaints against Tucker, Crum, and Belcher. (ECF No. 21 at 4). This falls far short of the deliberate-indifference standard set forth in *Shaw*. Lastly, the *Amended Complaint* is devoid of any allegations which could give rise to a plausible claim of an "affirmative causal link" between Sheriff Clemons's alleged inaction and the alleged harm. *Shaw*, 13 F.3d at 799. Accordingly, the undersigned respectfully recommends that Sheriff Clemons's *Motion for Judgment on the Pleadings* (ECF No. 38) be **GRANTED**, and Plaintiff's claims against him be **DISMISSED**.

### B.  Carter's *Motion for Judgment on the Pleadings* (ECF No. 40)

In his *Motion for Judgment on the Pleadings* (ECF No. 40), Deputy Carter argues that Plaintiff's *Amended Complaint* "pleads no facts to support any claim" against him; in particular, the *Amended Complaint* "makes no allegation that Defendant searched or seized Plaintiff or his property." (ECF No. 41 at 3). Because an officer may not be liable for the alleged actions of others under § 1983, Deputy Carter argues that dismissal of Plaintiff's claims against him is proper. *See id*. Additionally, Deputy Carter argues that he

is entitled to qualified immunity, because the *Amended Complaint* fails to make a "particularized showing" that Deputy Carter violated Plaintiff's constitutional rights. *Id.* at 5-6. Deputy Carter argues that, based upon the allegations in the *Amended Complaint*, he "merely was sitting outside in his cruiser when the Plaintiff was placed into the cruiser," and "then spoke to the Plaintiff." *Id.* at 6. Accordingly, Deputy Carter concludes that "Plaintiff pleads no facts to support any claim against Defendant Carter." *Id.*

In his response brief, Plaintiff argues that Deputy Carter "directly participated in" and "facilitated subordinates' misconduct" while knowing that their actions were unconstitutional, giving rise to bystander liability under § 1983. (ECF No. 55 at 2, 4) (citing *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416-17 (4th Cir. 2014)). Plaintiff further argues that Deputy Carter's "supervisory position created [a] duty to prevent known violations," that Deputy Carter's "prior involvement" in the search of Plaintiff's home in 2018 "establishes pattern and knowledge," and that "[q]ualified immunity does not protect knowing and repeated violations[.]" (ECF No. 55 at 4-5).

In his reply brief, Deputy Carter essentially argues that the *Amended Complaint* fails to demonstrate he knew that the search was improper. (ECF No. 63 at 2).[1]

In his surreply brief, Plaintiff argues that Deputy Carter "disregards clear evidence of direct participation." (ECF No. 70-2). Further, Plaintiff argues that Carter's mere "knowledge of violations [is] sufficient" to establish liability under § 1983. *Id.* at 3 (citing *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)). Plaintiff asserts that Carter's statement that "we wouldn't have any more encounters like this"—ostensibly, the 2018 search of Plaintiff's home—is sufficient to demonstrate "consistent methodology in

---

[1] Deputy Carter also argued that the owner of the premises, a "Mr. Esposito," consented to the search. (ECF No. 63 at 1-2). However, Defendant failed to raise this issue in his motion; therefore, the undersigned will not consider it.

violations." *Id.* at 3.

In the *Amended Complaint*, Plaintiff's allegations concerning Deputy Carter are solely limited to the following:

> As Tucker gets me outside, he puts me into Lieutenant Matt Carter's vehicle. Lt. Carter was in the driver's seat and spoke about how he told me last time how "we wouldn't have any more encounters like this" (Old case 18-80 that got dismissed for no warrant at same exact address), but Tucker had thought he had good information. I asked why they allow them (Tucker & Crum) to do whatever they want & Carter replied that "they love em" (referring to the Sheriff). Carter kept asking me if there was any truth to the information they had, stating that if I just cooperated they would go easy. Carter acknowledge[d] he didn't have a search warrant and asked me if I would give consent to search, which I denied . . . . Carter then transports me to the Logan County Sheriff Office.

(ECF No. 21 at 3).

It is well-established that, "[i]n a § 1983 personal or individual capacity suit, a plaintiff must show that the official charged personally caused the deprivation of his federal rights." *Karn v. PTS of America, LLC*, 590 F. Supp. 3d 780, 821 (D. Md. 2022) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "The law is clear that personal participation of a defendant is a necessary element of a Section 1983 claim against government officials in their individual capacities." *Blessing v. Scaturo*, 6:16-cv-1832, 2017 WL 3575734, at *9 (D.S.C. July 28, 2017) (citing *Trulock v. Free*, 275 F.3d 391, 402 (4th Cir. 2001)). "In order for an individual to be liable under Section 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights, [and the defendant] must have had personal knowledge of *and involvement in* the alleged deprivation of [the plaintiff's] rights[.]'" *Id.* (emphasis added). An officer may be liable under § 1983, on a theory of bystander liability, only if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. *Randall v. Prince*

*George's Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002) (holding that "mere inference" officers knew of involuntary detention was insufficient to demonstrate bystander liability).

Here, the *Amended Complaint* is devoid of *any* allegations which show that Deputy Carter exercised supervisory authority over the other two officers. Moreover, one prior incident—the 2018 search of Plaintiff's residence—is simply insufficient to demonstrate a "persistent and widespread" pattern giving rise to supervisory liability under § 1983. *See Davis v. Lilly*, 2023 WL 6565288, at *5 (W.D. Va. Oct. 10, 2023); *Robinson v. Baltimore Cnty.*, 2022 WL 3577267, at *6 (D. Md. Aug. 19, 2022).

Furthermore, Plaintiff does not allege sufficient plausible facts to establish that Deputy Carter was personally involved in committing an alleged constitutional violation. Plaintiff alleges that Officers Tucker and Crum—not Deputy Carter—conducted the warrantless search of his home. *See id.* There is no allegation that Deputy Carter participated in the search of Plaintiff's home, or used excessive force against Plaintiff at any time. At most, Deputy Carter was present on the scene and questioned Plaintiff. Therefore, by the plain language of Plaintiff's *Amended Complaint*, Deputy Carter did not personally engage in any of the conduct of which Plaintiff complains.

Plaintiff asserts in his response brief that Deputy Carter's knowledge of the past search incident of Plaintiff's home is sufficient to demonstrate Deputy Carter's knowledge of a pattern of misconduct. However, by the plain language of the *Amended Complaint*, Deputy Carter stated to Plaintiff that "Tucker had thought he had good information" when he performed the prior search. Not all warrantless searches are unconstitutional. Likewise, the allegations are insufficient to give rise to the inference that Deputy Carter knew that there was no probable cause to arrest the Plaintiff. Simply put, without more,

the allegations in Plaintiff's *Amended Complaint* fail to demonstrate that Deputy Carter knowingly condoned unconstitutional conduct. Thus, even assuming *arguendo* that qualified immunity did not bar Plaintiff's suit against Deputy Carter, Plaintiff has failed to state a plausible claim for relief pursuant to § 1983. Accordingly, the undersigned respectfully recommends that Deputy Carter's *Motion for Judgment on the Pleadings* (ECF No. 40) be **GRANTED**, and Plaintiff's claims against him be **DISMISSED**.

IV. **RECOMMENDATION**

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant Logan County Sheriff Paul D. Clemons's *Motion for Judgment on the Pleadings* (ECF No. 38) be **GRANTED**, Defendant Logan County Deputy Lieutenant Matt Carter's *Motion for Judgment on the Pleadings* (ECF No. 40) be **GRANTED**, and Plaintiff's claims against these two of the eight named Defendants in this civil action be dismissed.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection; further, pursuant to Rule 6(d), any unrepresented party shall have an additional three (3) days after this fourteen-day period if service is made via U.S. Mail. Extension of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Volk, and to each opposing party—except that, if any opposing party is represented by counsel, that party's

copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, and to transmit a copy to counsel of record and any unrepresented party.

ENTERED: June 20, 2025

_____
Dwane L. Tinsley
United States Magistrate Judge