## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

RANDALL TODD MOONEY,

                    Plaintiff,

v.                                              CIVIL ACTION NO.   2:24-cv-00304

LOGAN COUNTY COMMISSION, et al.,

                    Defendants.


### PROPOSED FINDINGS & RECOMMENDATION

This matter is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). Before this Court are *Motions for Judgment on the Pleadings* filed by four of the Defendants: Logan County K9 Deputy Timothy C. Johnson ("Johnson") (ECF No. 34); Logan County Deputy Corporal Coty Crum ("Crum") (ECF No. 36); Logan County Home Confinement Officer Marie Belcher ("Belcher") (ECF No. 42); and Logan County Deputy Corporal Nick Tucker ("Tucker") (ECF No. 44). For the reasons explained herein, it is respectfully **RECOMMENDED** that Defendant Logan County K9 Deputy Timothy C. Johnson's *Motion for Judgment on the Pleadings* (ECF No. 34) be **GRANTED**, and that Defendant Logan County Deputy Corporal Coty Crum's *Motion for Judgment on the Pleadings* (ECF No. 36), Defendant

Logan County Home Confinement Officer Marie Belcher's *Motion for Judgment on the Pleadings* (ECF No. 42), and Defendant Logan County Deputy Corporal Nick Tucker's *Motion for Judgment on the Pleadings* (ECF No. 44) be **GRANTED IN PART** and **DENIED IN PART**, as set forth *infra*.

## I.    <u>BACKGROUND</u>

Plaintiff Randall Todd Mooney ("Plaintiff"), who is proceeding pro se and *in forma pauperis*, initiated this civil action on June 20, 2024. (ECF No. 2). Plaintiff alleges a civil-rights action pursuant to 42 U.S.C. § 1983 against eight named Defendants: (1) the Logan County Commission ("LCC"); (2) Logan County Sheriff Paul D. Clemons ("Clemons"); (3) Logan County Deputy Lieutenant Matt Carter ("Carter"); (4) Logan County Deputy Corporal Nick Tucker ("Tucker"); (5) Logan County Deputy Corporal Coty Crum ("Crum"); (6) Logan County Home Confinement ("LCHC"); (7) Logan County Home Confinement Officer Marie Belcher ("Belcher"); and (8) Logan County K9 Deputy Timothy C. Johnson ("Johnson") (collectively, the "Defendants"). *Id*. at 1.

In his operative *Amended Complaint*, Plaintiff alleges that Defendants, Deputy Tucker and Deputy Crum, entered Plaintiff's residence without a warrant on the morning of June 22, 2022. (ECF No. 21 at 3). While there, Deputy Tucker seized cash from the residence and questioned Plaintiff after informing him that a tip from a confidential informant led them to believe that Plaintiff had a large amount of money in a freezer. *Id*. According to the *Amended Complaint*, Deputy Tucker threatened to take Plaintiff to jail for marijuana possession when Plaintiff refused to answer questions. *Id*. Plaintiff alleges that the marijuana in his possession was his "legal medical marijuana." *Id*. Plaintiff alleges that Deputy Tucker next dragged him from the home, dislocating Plaintiff's left shoulder

and "causing permanent damage" to Plaintiff's right foot in the process. *Id.* Plaintiff was handcuffed and placed in Deputy Carter's vehicle, where he was questioned by Carter. *Id.* Plaintiff further alleges that, although he expressly refused to consent to a search, Deputy Tucker and Deputy Crum conducted a warrantless search of his residence anyway "and used the medicine that I legally procured against me and created false charges on me." *Id.* Ultimately, Plaintiff was transported to the regional jail where he was held for approximately ten days before being released on bond. *Id.* at 3-4.

After posting bond, Plaintiff alleges that he was returned to jail based upon a purported detainer, and "held for appx 10 days illegally, filing multiple grievances for medical attention and wondering why I was being held after I posted bond." *Id.* at 4. Ultimately Plaintiff was informed that the detainer was a "clerical error," and he was released. *Id.* Upon his release—which ostensibly occurred on or about July 12, 2022— Plaintiff then walked to Med Express to seek medical treatment for his injuries. *See id.* Plaintiff explains that, by the time he left Med Express, the home confinement office was already closed. *Id.* Plaintiff alleges that Defendant, Officer Belcher, "procured a capias" in order to secure his arrest for failing to report, despite being aware that Plaintiff was seeking medical treatment and was unable to walk to the home confinement office to report in time before it closed. *Id.* According to Plaintiff, Officer Belcher thus "used her power to illegally lock me up again." *Id.* Plaintiff was then jailed "for 15 more days based on lies and abuse of power by Marie Belcher." *Id.*

According to the *Amended Complaint*, after he was released again, Plaintiff filed complaints against Deputy Tucker, Deputy Crum, and Officer Belcher with the Logan County Sheriff; the Sheriff then informed Officer Belcher of Plaintiff's complaint against

her. *Id.* Then, "[t]he very next morning [Officer Belcher] pulled the GPS on [Plaintiff's] home confinement box" and learned that Plaintiff had been to a storage unit. *Id.* According to Plaintiff, his supervising officer Jamie Sparks had given Plaintiff permission to do so. *Id.* Plaintiff alleges that, despite having permission to visit his storage unit, Officer Belcher informed Chief Deputy Fauci that Plaintiff "had been acting suspiciously." *Id.* According to Plaintiff, Officer Belcher did so "in retaliation because I filed [a] complaint" against her with the Sheriff. *Id.* The *Amended Complaint* further alleges that Defendant, Deputy Johnson, "then used false information, along with the created information from [Officer] Belcher, and put it on an affidavit to search" the storage unit. *Id.* Plaintiff alleges that Deputy Johnson swore falsely on the affidavit that Plaintiff "did commit the crime of delivery of a controlled substance," despite the fact that Plaintiff had not been found guilty of this charge. *Id.*

Plaintiff alleges that, on or about August 12, 2022, Deputy Johnson then "executed the search warrant with falsified evidence and information." *Id.* After the search of the storage unit, "[t]hey returned with ZERO evidence of a crime being committed, yet over $100,000 worth of high end collectibles was destroyed." *Id.* Plaintiff alleges that the criminal case against him was ultimately dismissed. *Id.*

Based upon these allegations, Plaintiff asserts claims against the Defendants pursuant to 42 U.S.C. § 1983, asserting that the Defendants acted in violation of his Fourth, Eighth, and Fourteenth-Amendment rights. *See id.* Specifically, reading the *Amended Complaint* liberally, as the Court must do with pro-se parties, Plaintiff appears to assert eight (8) total claims pursuant to 42 U.S.C. § 1983, as follows: (1) excessive force in violation of the Fourth Amendment stemming from Plaintiff's June 22, 2022

4

warrantless arrest; (2) illegal search and seizure in violation of the Fourth Amendment stemming from the warrantless entry into his residence and seizure of cash on June 22, 2022; (3) illegal search and seizure in violation of the Fourth Amendment stemming from the search of the subject storage unit on or about August 12, 2022; (4) fabrication of charges in violation of the Fourteenth Amendment stemming from Plaintiff's possession of marijuana on June 22, 2022; (5) wrongful seizure in violation of the Fourth Amendment stemming from Officer Belcher's alleged procurement of a capias for Plaintiff's arrest for failing to report to home confinement; (6) first-amendment retaliation stemming from Officer Belcher's response to Plaintiff's complaint to the Logan County Sheriff; (7) unspecified "excessive force or inhumane and illegal detention while detained" in violation of the Eighth Amendment; and (8) unspecified deprivation of life, liberty, or property without due process of law in violation of the Fourteenth Amendment. (*See* ECF No. 21). Plaintiff further alleges that, as a result of Defendants' actions, he has sustained physical injuries, emotional and psychological injuries, financial injuries, reputational injuries, and loss of liberty. *Id.* at 5. He seeks compensatory damages, punitive damages, and injunctive and declaratory relief. *Id.* at 6.

On September 20, 2024, each of the named Defendants filed a separate *Motion for Judgment on the Pleadings*. (ECF Nos. 30, 32, 34, 36, 38, 40, 42, 44).[1] Defendants Deputy Johnson, Deputy Crum, Officer Belcher, and Deputy Tucker all attached a number of records to their pending motions. First, in support of their motions, Defendants Deputy

---

[1] The motions filed by Defendants Logan County Home Confinement (ECF No. 30), Logan County Commission (ECF No. 32), Sheriff Paul D. Clemons (ECF No. 38), and Logan County Deputy Lieutenant Matt Carter (ECF No. 40), are addressed separately. The instant *Proposed Findings and Recommendation* is limited in scope solely to the motions filed by Defendants Deputy Johnson, Deputy Crum, Officer Belcher, and Deputy Tucker herein. (ECF Nos. 34; 36; 42; 44).

Johnson, Deputy Crum, and Deputy Tucker each attached copies of a *Criminal Complaint* dated June 22, 2022 from the Magistrate Court of Logan County, West Virginia. (ECF Nos. 34-2, 36-3, 44-3). The *Criminal Complaint*, as partially referenced in the *Amended Complaint*, charges Plaintiff with ten counts of possession with the intent to deliver a controlled substance as well as ten counts of conspiracy in violation of W. Va. Code § 60A-4-401; additionally, Plaintiff is charged therein with possession of a firearm in violation of W. Va. Code § 61-7-7 and possession of psychedelic mushrooms in violation of W. Va. Code § 60A-4-401(a)(i). *Id.* In support, the *Criminal Complaint* charges as follows:

> On Wednesday, June 22, 2022 Lieutenant Carter along with Corporals Crum and Tucker responded to [a residence] in the city of Logan in regards to a drug dealing investigation. Upon arrival and knocking on the front door Deputies were greeted by the home owner, Thomas Esposito. While speaking with Mr. Esposito officers could smell the strong odor of Marijuana emitting from within his residence and observed clear baggies containing green vegetation sticking out of his front left pocket. Mr. Esposito was then advised that Deputies responded to his home to investigate possible drug dealing activity. Mr. Esposito then gave Deputies both written and verbal consent to search his residence.[2]
>
> After entering the Esposito residence and searching the first floor Deputies located a vast amount of Marijuana in the living room and inside a refrigerator located in the laundry room along with packaging/distribution materials and digital scales. Mr. Esposito was also found to be in possession of (24) twenty four Suboxone 8mg sublingual films. Mr. Esposito advised that [Plaintiff] was on the second floor in a room to the right at the top of the stairs.
>
> After entering the room where [Plaintiff] was located Deputies observed several clear glass jars containing suspected Marijuana. A search of the room revealed an additional vast amount of Marijuana, (25 ½) Suboxone, (5) Xanax, (105) Klonopin, (50) Adderall Pills, (49) Roxicodone 30mg, Meth, THC Wax, Psychedelic Mushrooms, (92) Dextroamphetamine pills, and 1,920 Neurontin Pills.

---

[2] In support of their motions, Deputy Crum and Deputy Tucker attached tax records demonstrating that Mr. Esposito was the owner of the subject residence during the relevant time period. (*See* ECF Nos. 36-1, 44-1). Deputy Crum and Deputy Tucker also attached copies of the June 22, 2022 *Consent to Search* allegedly signed by Mr. Esposito. (ECF Nos. 36-4, 44-4).

> Further investigation lead Deputies to believe that [Plaintiff] had an additional amount of illegal drugs at his mothers house where he resides. I, Cpl. Tucker, then responded to [Plaintiff's] home . . . . Upon speaking with [Plaintiff's] mother . . . and advising her of what her son was arrested for she gave written and verbal consent to search her residence. [3] Upon searching [Plaintiff's] bedroom it is advised there was an additional (990) Neurontin pills and along with approximately (11 lbs) of Marijuana in the attic. The total approximate amount of Marijuana is around (22 lbs) and a total of (2910) Neurontin pill[s].

*Id.* at 1-2.

Next, Officer Belcher attached a copy of the Logan County, West Virginia Circuit Court's *Home Confinement Order* for Plaintiff in connection with his criminal case before that Court dated July 7, 2022. (ECF No. 42-1). The *Home Confinement Order* was filed on the record in Logan County Circuit Court Case No. CC-232-2022-B-102, styled *State of West Virginia v. Randall Mooney*. *Id.* Therein, the Logan County Circuit Court sets forth the terms of Plaintiff's pretrial release on bond after he was charged in the *Criminal Complaint*. (ECF No. 42-1). The *Home Confinement Order* required Plaintiff "to stay confined inside his home with the exception for specific instances approved in advance by the Home Confinement Officer." *Id.* at 2. Further, Plaintiff was required to "submit to the Court approved electronic monitoring and . . . permit the Home Confinement Officer to visit within the approved residence at any unannounced time." *Id.* Plaintiff was further prohibited from having in his possession or using, *inter alia*, "any narcotic drug or controlled substance without a valid prescription." *Id.* at 3. Finally, another term of the *Home Confinement Order* provides as follows:

---

[3] In support of their motions, Deputy Crum and Deputy Tucker attached tax records demonstrating that Plaintiff's mother was the owner of the subject residence during the relevant time period. (ECF No. 36-2, 44-2). Deputy Crum and Deputy Tucker also attached a copy of the *Consent to Search* allegedly signed by Plaintiff's mother on June 22, 2022. (ECF Nos. 36-5, 44-5).

> The defendant does hereby agree that whenever the Court, the home confinement officer, or any police officer has reasonable grounds to believe or suspect that he has in his possession any . . . narcotic drug, or controlled substance, he shall in such event voluntarily submit to and does hereby consent to a search of his person and property within his control at the time of said reasonable cause or suspicion for the purpose of determining whether he has in his possession of any such alcoholic beverage, narcotic drug, or controlled substance.

*Id.*

Lastly, Officer Belcher attached a copy of the *Circuit Court Capias* referenced in Plaintiff's *Amended Complaint.* (ECF No. 42-2). This document is signed by Logan County Circuit Court Judge Joshua Butcher and was entered on July 12, 2022 in the felony criminal action styled *State of West Virginia v. Randall Mooney*, Case No. 22-B-102, in the Circuit Court of Logan County, West Virginia. *Id.* It authorizes Plaintiff's arrest based upon "[f]ailure to report to home confinement." *Id.*

Next, Defendants Deputy Johnson and Officer Belcher attached an *Affidavit and Complaint for Search Warrant* dated August 12, 2022, as well as a *Search Warrant* bearing that same date and signed by the Logan County, West Virginia Magistrate authorizing the search of the subject storage unit described in Plaintiff's *Amended Complaint.* (ECF Nos. 34-1; 42-3). Deputy Johnson attested in support of the *Search Warrant* "[t]hat on the 12th day of August, 2022 . . . [Plaintiff] did commit the crime of delivery of a controlled substance in the area of Logan County West Virginia." (ECF No. 34-1 at 1). According to the *Affidavit* submitted by Deputy Johnson in support of the *Search Warrant*, the Plaintiff "ha[d] been arrested recently for Possession with Intent to Deliver illegal narcotics in the County of Logan in which he is on Home Confinement for those offenses." *Id.* Deputy Johnson further attested that "Home Confinement Officer Belcher [made] a suspicious activity complaint" to the Logan County Sheriff Department

on August 12, 2022, after she "noticed activity on [Plaintiff's] GPS bracelet frequenting the location of the storage buildings . . . in Mud Fork, Logan County." (ECF No. 34-1 at 5). Deputy Johnson "ha[d] prior knowledge of [Plaintiff], that he was recently arrested for Possession with the intent to deliver and other charges where members of the Logan County Sheriff's Department were able to seize a large amount of illegal narcotics from the residence." *Id.* Deputy Johnson attested that, "[u]pon receiving the complaint, [he] utilized his K-9 . . . to conduct a sniff of the front of the storage unit in which [the K-9] did indicate the presence of narcotics[.]" *Id.* On this basis, Deputy Johnson requested a warrant to search the storage unit/locker described. *Id.* Based upon Deputy Johnson's *Affidavit*, the Logan County Magistrate issued the *Search Warrant* that same day, authorizing the Logan County Sheriff Department to search the storage unit identified in the warrant application that is the subject of Plaintiff's *Amended Complaint* in this civil action. *See id.* at 2.

Deputy Johnson also attached to his motion an *Incident Report* from August 12, 2022. (ECF No. 34-1 at 7). Therein, Deputy Johnson reported that, upon receipt of the search warrant from the Logan County Magistrate, "Cpl. Tucker . . . gained entry to the unit." *Id.* at 8. Deputy Johnson further reported that, "[u]pon searching the unit, Officers located one marijuana cigarette roach and multiple packs of rolling papers consistent with marijuana usage." *Id.* Deputy Johnson further "note[d] that the owner of the storage unit, Tarah Muncey signed the back of the return acknowledging her receipt of her copy of the search warrant." *Id.* Lastly, Deputy Johnson stated in the *Incident Report* that "[a]t this time, no charges are pending due to this incident and the case will be closed and submitted for approval." *Id.*

9

Following the Defendants' filing of the above-referenced motions, the undersigned then entered an *Order and Notice* setting forth a briefing schedule and informing Plaintiff of his rights and responsibilities in responding to the motions in accordance with the Fourth Circuit's opinion in *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff then filed timely responses on November 6, 2024. (ECF Nos. 54, 55, 56, 57, 58, 59, 60, 61). In turn, Defendants filed their reply briefs on November 13, 2024. (ECF Nos. 62, 63, 64, 65, 66, 67, 68, 69). Lastly, Plaintiff sought to submit surreply briefs on November 25, 2024. (ECF Nos. 70-1, 70-2, 70-3, 70-4, 70-5, 70-6, 70-7, 70-8). The Court subsequently granted Plaintiff leave to file his proffered surreply briefs. (ECF No. 72). As such, the motions are now ripe for adjudication. The instant *Proposed Findings and Recommendation* takes up herein the motions filed by Defendants Johnson (ECF No. 34), Crum (ECF No. 36), Belcher (ECF No. 42), and Tucker (ECF No. 44).

## II.    LEGAL STANDARD

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), this Court applies the same standard it applies to a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). That is, this Court accepts as true all the well-pleaded factual allegations in the complaint and draws all reasonable factual inferences in the non-movant's favor. *Pulte Home Corp. v. Montgomery Cty.*, 909 F.3d 685, 691 (4th Cir. 2018).

Pursuant to Federal Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is proper when, even if the facts alleged by the plaintiff are true, the complaint fails to state "a claim upon which relief can be granted" under the applicable law. *Glessner v.*

*Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss under this minimal standard, the complaint only needs to set forth enough allegations of fact which, if true, suggest a clearly-identifiable legal claim for relief that "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be "plausible," the complaint does not need to include "detailed factual allegations." *Twombly*, 550 U.S. at 555. Further, a complaint should not be dismissed simply because the actual *proof* of those facts is improbable, because recovery is unlikely, or because the legal theory supporting the claim is not stated perfectly. *Id.*; *accord Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

On the other hand, a complaint may not simply rely on bald accusations, conclusory statements, or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). The U.S. Supreme Court has explained that if the complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is proper. *Twombly*, 550 U.S. at 555. In other words, it is fundamentally insufficient for a complaint to be made up of nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must plead facts which move the claim beyond the realm of mere possibility, and allow the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678.

When reviewing a defendant's motion to dismiss, the Court decides whether the complaint met this standard by separating the legal conclusions from the factual

allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to "reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Where, as here, a plaintiff is proceeding "pro se"—or in other words, without legal counsel—the Court must "liberally construe" the complaint, meaning that it is held to a less stringent standard than if it had been drafted by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, when a potentially-viable complaint is deficient but its shortcomings can be remedied by amendment, the pro-se plaintiff should be given an opportunity to amend the complaint and "particularize" his or her allegations. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate his cause of action."); *Coleman v. Peyton*, 370 F.2d 603, 604 (4th Cir. 1965) (reversing dismissal and explaining that "claims of legal substance should not be forfeited because of a failure to state them with technical precision"). Nevertheless, the requirement of liberal construction does not mean that the Court may ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990) (citing *Iqbal*, 556 U.S. at 685 (2009). Likewise, "a district court is not required to recognize obscure or extravagant claims defying the most concerted efforts to unravel them." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("[E]ven a solicitous examination of the allegations reveals little on which federal subject matter jurisdiction may be based.") (internal markings

omitted). In other words, the mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him or her, or "conjure up questions never squarely presented" to the Court. *Randolph v. Baltimore City*, 14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech*, 588 Fed. App'x 219 (4th Cir. 2014) (citations omitted) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). *See also Weller*, 901 F.2d at 391 (affirming dismissal where the "complaint fail[ed] to allege anything that even remotely suggests a factual basis for the claim," and explaining that "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate"). Consequently, the Court may deny leave to amend when "the amendment would be futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

## III.   <u>DISCUSSION</u>

Because the Defendants' motions largely seek relief on the same or similar bases, the undersigned takes them up together herein with respect to each issue they have raised in support of judgment on the pleadings.

As an initial matter, the undersigned notes that Defendants' motions do not rest solely on the pleadings, as Defendants have attached a number of documents to their respective motions. *See* Part I., *supra*. When ruling on a motion for judgment on the

pleadings—subject to the same standard as a 12(b)(6) motion—"courts are limited to considering the sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint." *Simon v. Gladstone*, 23-1431, 2025 WL 721317, at *3 (4th Cir. Mar. 6, 2025) (citations omitted). A document attached to a defendant's motion may be considered, therefore, if "it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Similarly, "a court may properly take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Id.* Otherwise, Rule 12(d) of the Federal Rules of Civil Procedure provides that if matters "outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Id.*

With respect to the *Criminal Complaint* (ECF No. 34-2), *Search Warrant* and supporting *Affidavit* (ECF No. 34-1), *Home Confinement Order* (ECF No. 42-1), and *Circuit Court Capias* (ECF No. 42-2), the undersigned **FINDS** that judicial notice of these documents is appropriate. *See Polidi v. Boente*, 5:22-cv-519, 2024 WL 3561948, at *5 (E.D.N.C. June 28, 2024), *adopted*, 2024 WL 3557434 (E.D.N.C. July 26, 2024) (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[C]ourts may properly take judicial notice of proceedings in other courts and the contents of court records.")). However, the Court merely takes notice of the existence of these records and makes no finding for the purposes of adjudicating the instant motions herein with respect to the parties' characterization of, or disagreement about the meaning ascribed to, these documents.

However, the undersigned finds that the *Incident Report* (ECF No. 34-1 at 7), tax records (ECF Nos. 36-1, 36-2), and *Consent to Search* forms (ECF Nos. 36-4, 36-5) are neither matters of "public record" of which the Court may take judicial notice, nor are they incorporated into the *Amended Complaint*. *See McDowell v. Town of Sophia*, 5:12-cv-01340, 2012 WL 3778837, at *3 (S.D.W. Va. Aug. 30, 2012), *adopted*, 2013 WL 525177 (S.D.W. Va. Feb. 11, 2013) (finding that "police reports are not matters of 'public record' of which the Court may take judicial notice"). Further, the undersigned declines to use the Court's discretionary authority under Rule 12(d) of the Federal Rules of Civil Procedure to convert defendants' motions to motions for summary judgment because the issues presented in these documents are more appropriate for consideration after the parties have had an opportunity to fully conduct discovery. *See id.*

## A.    <u>Unspecified Eighth Amendment and Fourteenth Amendment Claims</u>

### i.    <u>Unspecified Eighth Amendment Claims</u>

Plaintiff's *Amended Complaint* asserts a § 1983 claim generally on the grounds that Defendants' alleged actions "have . . . violated" his "Eighth Amendment Rights," which "protect[] against excessive force or inhumane and illegal detention while detained." (ECF No. 21 at 2). Defendants seek judgment on the pleadings as to Plaintiff's Eighth Amendment claims, however, because "[t]he Eighth Amendment only pertains to punishment that occurs after an individual has been convicted." (ECF Nos. 35 at 10; 37 at 11; 43 at 13; 45 at 15) (quoting *U.S. v. Hall*, 551 F.3d 257, 273 (4th Cir. 2009)). Having reviewed Plaintiffs' briefing, it appears that he does not contest this issue. (*See, e.g.*, ECF Nos. 56; 58; 60; 61; 70-1; 70-4; 70-5; 70-8).

Defendants are correct that the U.S. Supreme Court has distinguished Eighth-

Amendment claims as arising "after . . . the State . . . has secured a formal adjudication of guilt[.]" *Ingraham v. Wright*, 430 U.S. 651-671-72 n.40 (1977). "Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Id.* Pursuant to this standard, "[t]he Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's proscription against cruel and unusual punishment, governs cases in which pre-trial detainees allege constitutional violations." *Holmes v. Van Doran*, 0:11-cv-1325, 2012 WL 2018267, at *3 (D.S.C. Mar. 28, 2012), *adopted*, 2012 WL 2026752 (D.S.C. June 5, 2012), *aff'd*, 490 Fed. App'x 572 (4th Cir. 2012).

According to the *Amended Complaint* in this case, Plaintiff was charged with a crime during the events alleged therein, was released on bond, and—ultimately—the criminal case was dismissed. (*See* ECF No. 21 at 4). By Plaintiff's own account, he was not convicted of a crime during the relevant time period. *See generally id.* Because Plaintiff does not allege that the Defendants' conduct at issue occurred following a formal adjudication of guilt, the undersigned finds that Plaintiff's § 1983 claims fail to the extent they are predicated upon alleged violations of the Eighth Amendment. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' motions (ECF Nos. 34; 36; 42; 44) be **GRANTED** as to this issue, and that Plaintiff's Eighth Amendment claims be **DISMISSED**.

ii.    Unspecified Fourteenth Amendment Claims

Plaintiff's *Amended Complaint* also asserts a § 1983 claim on the grounds that Defendants' alleged actions "have . . . violated" his "Fourteenth Amendment Rights," which "guarantees due process of law before depriving any person of life, liberty, or

property." (ECF No. 21 at 2). Defendants Johnson, Crum, Belcher, and Tucker each move to dismiss Plaintiff's § 1983 claims based upon violation of Plaintiff's Fourteenth-Amendment rights to the extent such claims stem from alleged "pre-arrest excessive force[.]" (ECF Nos. 35 at 11; 37 at 12; 43 at 14; 45 at 15). Upon review of the

*Amended Complaint*, it is not apparent to the undersigned that Plaintiff asserts a § 1983 claim for violation of the Fourteenth Amendment based upon alleged pre-arrest excessive force by the Defendants. Further, as Defendants point out in their replies, "Plaintiff agrees [in his response briefing] that the excessive force claim must be analyzed under the Fourth Amendment's objective reasonableness standard." (ECF No. 67 at 7). (*See also* ECF Nos. 64 at 5; 65 at 8; 66 at 5). Rather, Plaintiff's § 1983 claims for violation of the Fourteenth Amendment stem from Plaintiff's fabrication-of-charges allegations. Accordingly, to the extent that Plaintiff asserts a § 1983 claim based upon unspecified violations of the Fourteenth Amendment, the undersigned respectfully recommends that Defendants' motions for judgment on the pleadings   (ECF Nos. 34; 36; 42; 44) be **GRANTED** as to this issue, and such claims be **DISMISSED**.

## B. <u>Excessive Force</u>

First, Defendants Johnson, Crum, Belcher, and Tucker each move for judgment on the pleadings as to Plaintiff's claim for excessive force. In the *Amended Complaint*, Plaintiff alleges that, on the morning of June 22, 2022, Deputy Tucker "violently grabbed" Plaintiff's right foot to wake him up. (ECF No. 21 at 3). Deputy Tucker then allegedly grabbed and handcuffed the Plaintiff, dislocating his left shoulder in the process. *Id*. Deputy Tucker then allegedly pulled Plaintiff down the stairs and, once outside, placed Plaintiff into Deputy Carter's vehicle. *Id*. Plaintiff alleges that, during this process, Deputy

Tucker "stomp[ed] on [Plaintiff's] right foot, cracking [Plaintiff's] toenail and causing permanent damage." *Id.* Plaintiff alleges that, as a result of this alleged conduct during the arrest, he "sustained physical injuries, including but not limited to, dislocated/sprained shoulder, crushed toenail, bruised foot, and foot is constantly numb." *Id.* at 5.

In support of his motion for judgment on the pleadings, Defendant Tucker argues that Plaintiff's excessive-force claim fails "because the injury alleged is de minimis." (ECF No. 45 at 7). Defendant Tucker notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 8 (quoting *Weigle v. Pifer*, 139 F. Supp. 3d 760, 769 (S.D. W. Va. 2015)). Pursuant to this principle, Defendant Tucker points to Fourth-Circuit authority stating that "lawful arrest of a resisting suspect that causes the suspect to suffer only de minimis injuries does not constitute excessive force." *Id.* at 7 (quoting *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017)).

Defendant Tucker's reliance on *Weigle* is inapt under the circumstances. In *Weigle*, this Court found that genuine issues of material fact precluded summary judgment on an arrestee's excessive-force claims. A claim of excessive force by police during an arrest is properly analyzed under the Fourth Amendment by a determination of whether the officer's conduct was "objectively reasonable." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). *See also Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (explaining that pretrial detainees' excessive-force claims under the Fourteenth Amendment are analyzed under the same standard of objective reasonableness). Objective reasonableness, in turn, is measured by

the "proportionality of the force in light of all the circumstances." *Omeish v. Kincaid*, 86 F.4th 546, 556 (4th Cir. 2023). Thus, the assessment of objective reasonableness "is not mechanistic, but is evaluated based on the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

At the pleading stage, Plaintiff "must allege enough facts relevant to the reasonableness of the officers' actions to raise a right to relief above the speculative level." *Wiggins v. Quesenberry*, 222 F. Supp. 3d 490, 500 (E.D. Va. 2016) (quoting *Twombly*, 550 U.S. at 555). Here, Plaintiff alleges facts that, if true, support a plausible claim of objectively unreasonable force by Defendant Tucker. Plaintiff alleges that Defendant Tucker responded with more force than necessary when he "violently grabbed" Plaintiff and caused multiple injuries, requiring Plaintiff to seek medical attention. According to the facts pled, it does not appear that Plaintiff made any attempt to flee or resist arrest. Thus, Plaintiff has alleged facts that, if true, support a plausible claim for objectively unreasonable conduct by Defendant Tucker because Defendant Tucker used force to seize Plaintiff's person that was disproportionate to the threat that Plaintiff posed as a cooperative citizen. The facts as alleged plausibly demonstrate that Defendant Tucker's conduct caused shoulder and foot injuries, for which Plaintiff later sought medical attention, and that Defendant Tucker intended to commit the physical action of grabbing the Plaintiff. Plaintiff alleges that the injuries caused were permanent. Whether the injuries were, in fact, *de minimis*, appears at this time to be a question of fact that is more appropriately determined after the parties have had the opportunity to complete discovery. As Plaintiff's allegations are accepted as true for the purpose of a motion for judgment on the pleadings, Plaintiff's excessive-force claim against Defendant Tucker

stands. Accordingly, Defendant Tucker's motion for judgment on the pleadings is **DENIED** as to Plaintiff's excessive-force claim.

However, the undersigned **FINDS** that Plaintiff's *Amended Complaint* fails to state an excessive-force claim against any of the remaining Defendants, who have also sought judgment on the pleadings with respect to Plaintiff's excessive-force claim stemming from the injuries Plaintiff allegedly sustained on June 22, 2022. (*See* ECF Nos. 35 at 9; 37 at 10; 43 at 12). With the exception of Defendant Crum, none of the other named Defendants were present when Defendant Tucker allegedly injured the Plaintiff. Nor did Plaintiff allege any other past or widespread incidents of excessive force leading up to his June 22, 2022 arrest. *See Wiggins v. Quesenberry*, 222 F. Supp. 3d 490, 501 (E.D. Va. 2016). As for Defendant Crum, Plaintiff's *Amended Complaint* merely alleges that he saw "Officer Crum standing in the doorway approximately 8-10 feet away" at the time of the arrest. (ECF No. 21 at 3). As the U.S. District Court for the Eastern District of Virginia explained in the context of similar allegations in *Wiggins*, "[a]s a general matter, a law officer may incur § 1983 liability only through affirmative misconduct." *Id.* (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 202 (4th Cir. 2002)). Further, the Eastern District of Virginia explained in *Crum* that a fellow officer's "close proximity," standing alone, is insufficient to demonstrate bystander liability for excessive force. *See id.* Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant Tucker's motion (ECF No. 44) be **DENIED** on this issue, that Defendants Johnson, Crum, and Belcher's motions (ECF Nos. 34; 36; 42) be **GRANTED**, and Plaintiff be permitted to move forward to discovery on his excessive-force claim against Defendant Tucker only.

**C.**    **Illegal Search and Seizure – June 22, 2022**

Defendants further seek judgment on the pleadings with respect to the first of Plaintiff's two illegal search-and-seizure claims. In the *Amended Complaint*, Plaintiff first asserts a § 1983 claim based upon illegal search and seizure in violation of the Fourth Amendment arising from his interaction with law enforcement officers on June 22, 2022. (ECF No. 21 at 2). Plaintiff alleges therein that, on the morning of June 22, 2022, Deputy Tucker and Deputy Crum "busted through my front door" where Plaintiff "was sleeping in my bed" without a warrant. *Id.* at 3. Deputy Tucker allegedly stated to Plaintiff that "a confidential informant said that I had a large amount of money in a freezer[.]" *Id.* at 3. Plaintiff alleges that, although he refused to consent to a search, Deputy Tucker and Deputy Crum allegedly proceeded with a warrantless search of "my home," and "stole a large amount of money[.]" *Id.* at 2. Specifically, Plaintiff alleges that, upon Tucker and Crum's entry of Plaintiff's residence, Deputy Tucker allegedly "noticed the large amount of money that [Plaintiff's] son had received for graduation and had just left several hours before." *Id.* at 3. Deputy Tucker then allegedly "grabbed the money and shoved it inside his vest saying 'we will count this later'." *Id.* Plaintiff alleges that Deputy Crum later "testified that a confidential informant gave him information[.]" *Id.* at 4. However, Plaintiff alleges that he later "subpoenaed said informant," who "under oath on the stand he called [Deputy] Crum a liar, and Crum was unable to produce paperwork to confirm that he even had a informant to begin with." *Id.* Based upon these allegations, Plaintiff alleges that the officers' "illegal" search and seizure on June 22, 2022 violated his Fourth-Amendment rights, and led to "over $20,000 being stolen and a large amount of damage to the property in [his] home." *Id.* at 5.

Defendants Tucker and Crum argue that Plaintiff's illegal search-and-seizure claim against them fails because the owner of the property searched consented, and Plaintiff had no standing to object as a mere visitor. (*See* ECF Nos. 37 at 3; 45 at 8). In support, Defendants dispute the allegation in the *Amended Complaint* that the address where the warrantless search occurred on June 22, 2022 constituted Plaintiff's "home." *See id.* However, Defendants rely on evidence outside the pleadings, as well as an inference that the allegations in the *Criminal Complaint* are true with respect to the consent and ownership of the property being searched, in support of their argument. *Id*. For purposes of Defendants' motions for judgment on the pleadings, the undersigned has **FOUND** that consideration of these materials as sought by the Defendants is not appropriate under the present procedural posture of this case. *See* discussion, *supra*. Based upon this extrinsic evidence, Defendants argue that Plaintiff was merely "an overnight guest or tenant" and therefore could not refuse a search of the "room to the right at the top of the stairs" where Plaintiff was located when Defendants Tucker and Crum allegedly entered and woke him on the morning of June 22, 2022. (*See* ECF Nos. 37 at 9; 45 at 14).

In his response brief, Plaintiff argues *inter alia* that, while he is not the owner of the property, he rents a room therein; Plaintiff describes the property as his "legal residence" at the time of the search. (*See* ECF Nos. 56; 58). In response to the extrinsic evidence submitted by Defendants, Plaintiff submitted "rent receipts proving tenancy" and other documents in support of his position. (*See* ECF No. 58 at 2). As discussed *supra*, however, the undersigned **FINDS** that such extrinsic evidence is not appropriate for consideration of Defendants' subject motions.

In reply, Defendants argue, *inter alia*, that "Plaintiff alleges no facts showing that

Deputy Crum would have reason to know that Plaintiff was renting the room there." (ECF No. 66 at 3). (*See also* ECF No. 67 at 2) ("Plaintiff pleads no facts to show that Deputy Tucker would have reason to know that Plaintiff rented a room upstairs[.]").

The Fourth Amendment protects people, and their "houses, papers, and effects" against "unreasonable searches or seizures." U.S. Const. amend. IV. "As that text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Quinn v. Zerkle*, 2:21-cv-00421, 2021 WL 6050656, at \*5 (S.D.W. Va. Dec. 20, 2021) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Intrusions into private residences are subject to particular scrutiny, and "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). However, "the warrant requirement is subject to certain exceptions." *Quinn*, 2021 WL 6050656, at \*5 (citing *Stuart*, 547 U.S. at 403). Accordingly, it is the government's burden to show that a search or seizure carried out in a person's home without a warrant "falls within one of a carefully defined set of exceptions," such as the presence of exigent circumstances or valid consent. *Schmidt v. Hunsberger*, 1:14-cv-1372, 2015 WL 1258961, at \*3 (E.D. Va. Mar. 17, 2015), *aff'd*, 615 F. App'x 808 (4th Cir. 2015) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)).

Defendants' reliance on the homeowner's alleged consent to the search is simply insufficient to warrant dismissal under the circumstances. First, Defendants' position is impermissibly reliant upon extrinsic evidence, as discussed *supra*. Moreover, even assuming *arguendo* that the homeowner did consent to the search, the U.S. Supreme Court has expressly recognized that "*a physically present inhabitant's* express refusal of consent to a police search [of his home] is dispositive as to him, regardless of the consent

of a fellow occupant." *Fernandez v. California*, 571 U.S. 292, 298 (2014) (citing *Georgia v. Randolph*, 547 U.S. 103 (2006)). Plaintiff expressly alleges in his *Amended Complaint* that he was a physically-present inhabitant, and that he expressly refused to consent to a search. (*See* ECF No. 21 at 3). Accepting Plaintiff's allegations as true, as the Court must do at this stage, the undersigned **FINDS** the allegations state a plausible claim that the officers' search of Plaintiff's room and the subsequent seizure of property therein violated the Fourth Amendment.

Defendants argue that "Plaintiff's *Amended Complaint* contains no allegation that he was an overnight guest or tenant" at the residence in question. (ECF Nos. 37 at 9; 45 at 14). However, a different inference could be drawn from the factual allegations set forth in the *Amended Complaint*. Plaintiff alleges therein that, on the morning of the search, "*I was sleeping in my bed* as Tucker violently grabbed my right foot and woke me up." (ECF No. 21 at 3) (emphasis added). Plaintiff also describes the residence as "my home." *Id.* at 3, 5. At best, therefore, Defendants have demonstrated a factual dispute in support of their affirmative defense that the warrantless search was reasonable under the circumstances. Plaintiff's failure to anticipate this affirmative defense in his initial pleading does not render Plaintiff's allegations implausible or deficient. Rather, Defendants merely raise a defense that requires a factual determination—one that is more appropriately resolved *after* the parties have had an opportunity to conduct discovery. After all, as set forth *supra*, it is the *government's* burden to overcome the presumption that a warrantless search was unreasonable by demonstrating valid consent. *See Schmidt*, 2015 WL 1258961. Accordingly, Defendant Tucker and Defendant Crum's motions for judgment on the pleadings are **DENIED** as to Plaintiff's illegal search-and-seizure claims stemming from

24

the events of June 22, 2022.

However, the undersigned **FINDS** that Plaintiff's *Amended Complaint* fails to state a claim against any of the remaining Defendants, who have also sought judgment on the pleadings with respect to the search and seizure that occurred on June 22, 2022. The other named Defendants did not take part in the search and seizure, and were not alleged to be present at the scene. Nor did Plaintiff allege widespread incidents of illegal search leading up to the June 22, 2022 events. And while Plaintiff makes conclusory and vague assertions regarding conspiracy in the *Amended Complaint*, he plainly fails to set forth plausible allegations of fact in support of a conspiracy claim. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant Tucker and Crum's motions (ECF Nos. 36; 44) be **DENIED** on this issue, that Defendants Johnson and Belcher's motions (ECF Nos. 34; 42) be **GRANTED**, and Plaintiff be permitted to move forward to discovery on his Fourth-Amendment claim against Defendants Tucker and Crum only in connection with their search of the home on June 22, 2022 and seizure of property therein.

### D.    <u>Illegal Search – August 12, 2022</u>

Defendants next seek judgment on the pleadings with respect to Plaintiff's Fourth-Amendment claim for illegal search of the storage unit on or about August 12, 2022. In the *Amended Complaint*, Plaintiff also asserts a § 1983 claim based upon illegal search and seizure in violation of the Fourth Amendment arising from law enforcement officers' search of a storage unit pursuant to a warrant on or about August 12, 2022. (ECF No. 21 at 4). According to the *Amended Complaint*, Deputy Johnson executed a search warrant on or about August 12, 2022, and conducted a search of the subject storage unit. *Id.* at 4.

25

In the process, Plaintiff claims that the search "returned with ZERO evidence of a crime being committed, yet over $100,000 worth of high end collectibles was destroyed." *Id.* Plaintiff alleges in the *Amended Complaint* that the warrant authorizing the search of the storage unit was invalid for a number of reasons. First, Plaintiff alleges that the storage unit "wasn't even in my name." *Id.* Further, Plaintiff alleges that unspecified "deputies"— ostensibly Deputy Tucker, Deputy Crum, and Deputy Johnson—"conspired with other officers"—namely, Officer Belcher—"by illegally creating 'probable cause' to procure a search warrant for [the] storage unit." *Id.* at 2. Specifically, Plaintiff alleges that Officer Belcher "inform[ed] Chief Deputy Fauci that [Plaintiff] had been acting suspiciously" after Officer Belcher "pulled the GPS on [Plaintiff's] home confinement box and [saw] I had been to a storage unit." *Id.* at 4. According to Plaintiff, he had been given permission to visit the storage unit by Home Confinement Officer Jamie Sparks, but Officer Belcher "never asked . . . Sparks if I had permission to go." *Id.* Officer Belcher thus help[ed] Deputy Johnson get a search warrant for the storage unit[.]" *Id.* Further, Plaintiff alleges in the *Amended Complaint* that Deputy Johnson then "used false information, along with the created information from [Officer] Belcher, and put it on an affidavit" in support of the warrant application for search of the storage unit. *Id.* The *Amended Complaint* appears to allege that the "false information" supplied by Deputy Johnson in the affidavit was his statement that Plaintiff "did commit the crime of delivery of a controlled substance[.]" *Id.* It appears that Plaintiff alleges Deputy Johnson's affidavit was false because Plaintiff "hadn't been found guilty of" the charged crime; further, Plaintiff alleges that this charge had been "created" falsely by Deputy Tucker and Deputy Crum. *Id.* Based upon Plaintiff's allegation that the search warrant was invalid, he asserts that the search

of the storage unit was "illegal." *Id.*

First, Defendant Johnson argues that Plaintiff's illegal search-and-seizure claim against him based upon Johnson's execution of the search warrant at the storage unit should be dismissed because "Deputy Johnson is entitled to absolute immunity for performing a quasi-judicial and/or quasi-prosecutorial function." (ECF No. 35 at 3). Specifically, Deputy Johnson argues that, because his "only role in Plaintiff's *Amended Complaint* is obtaining and executing a search warrant issued by a judge, Deputy Johnson is entitled to absolute immunity." *Id.* at 5 (citing *Hussell v. Jackson Cty. Prosecuting Att'y*, 2:19-cv-00101, 2020 WL 4210487, at *9 (S.D. W. Va. Feb. 14, 2020), *adopted*, 2020 WL 4208942 (S.D. W. Va. July 22, 2020)).

In his response brief, Plaintiff argues that "this immunity does not extend to knowingly fabricating evidence to obtain that warrant." (ECF No. 61 at 2) (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). Plaintiff points out that his *Amended Complaint* "specifically alleges that Deputy Johnson 'used false information, along with created information from [Officer Belcher], and put it on an affidavit to search property.' " (ECF No. 61 at 2) (quoting ECF No. 21 at 4). Plaintiff argues that "[t]his allegation of knowingly false statements in a warrant application falls outside the scope of absolute immunity." (ECF No. 61 at 2) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Finally, Plaintiff argues that "[t]he complete absence of any illegal items found during the search further supports the conclusion that the warrant was based on fabricated information." *Id.*

To state a constitutional claim against Deputy Johnson for making false statements in the warrant application and supporting affidavit, Plaintiff must allege (1) that Deputy

Johnson "knowingly and intentionally or with a reckless disregard for the truth either made false statements in [his] affidavit[] or omitted facts from [the] affidavit[], thus rendering the affidavit[] misleading," and (2) "that those false statements or omissions are material, that is, necessary to a neutral and disinterested magistrate's authorization of the search." *Evans v. Chalmers*, 703 F.3d 636, 650 (4th Cir. 2012) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

To be sure, Plaintiff alleges in vague terms that Deputy Johnson made false statements. As Deputy Johnson points out, however, (*see* ECF No. 64 at 1), Plaintiff fails to specify in the *Amended Complaint* what Deputy Johnson allegedly fabricated or falsified—nor does the *Amended Complaint* set forth any plausible allegations with respect to Deputy Johnson's knowledge of any retaliation or misconduct on the part of Officer Belcher. Plaintiff alleges vaguely that unspecified "deputies"—ostensibly Deputy Tucker, Deputy Crum, and Deputy Johnson—"conspired with other officers"—namely, Officer Belcher—"by illegally creating 'probable cause' to procure a search warrant for [the] storage unit." *Id.* at 2. Again, however, Plaintiff fails to set forth non-conclusory factual allegations explaining what acts or omissions the named Defendants took in furtherance of this alleged conspiracy. Without more, merely alleging that Deputy Johnson made false statements or that Defendants conspired to make false charges is patently insufficient to state a claim. The U.S. Supreme Court has specifically explained that if the complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is proper. *Twombly*, 550 U.S. at 555. In other words, it is fundamentally insufficient for a complaint to be made up of nothing more than "an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must plead facts which move the claim beyond the realm of mere possibility, and allow the court to draw the reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. *See also Everette-Oates v. Chapman*, 20-1093, 2021 WL 3089057, at *6 (4th Cir. July 22, 2021) (finding that "the inferences that plaintiff seeks to draw are too attenuated and speculative" to support a conspiracy claim).

The only allegation in the *Amended Complaint* that is sufficiently plausible to support Plaintiff's claim that the search warrant was invalid is Deputy Johnson's alleged statement that Plaintiff "*did commit* the crime of delivery of a controlled substance," when Plaintiff had merely been *charged* with committing this offense. (*See* ECF No. 21 at 4) ("On the affidavit Johnson swore under oath that '[Plaintiff] did commit the crime of delivery of a controlled substance' using the created charges from Nick Tucker & Coty Crum that [Plaintiff] hadn't been found guilty of."). However, this allegation is insufficient to support an inference of materiality, because the officers did not need to prove Plaintiff was guilty of the charged crime to support a finding of probable cause. *See Everette-Oates*, 2021 WL 3089057, at *6 (explaining that false statements or omissions are material if they are "necessary to the finding of probable cause"). Probable cause is not a "high bar." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) (citing *Kaley v. United States*, 571 U.S. 320, 338 (2014)). It "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction" beyond a reasonable doubt. *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). Instead, "[i]t 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)) (citation

omitted). It is undisputed that Plaintiff was charged with committing the crime of delivery of a controlled substance. It is also undisputed that Plaintiff did travel to the storage unit as alleged. These statements support the magistrate's probable cause determination—and fail to demonstrate material falsity.

Moreover, it is undisputed that Plaintiff was not the owner of the storage unit, and that the owner gave consent to search. Under such circumstances, the search was clearly not conducted in violation of the Fourth Amendment. In addition to the owner's consent, the terms of Plaintiff's release on bond further authorized the search. Consequently, the undersigned **FINDS** that Plaintiff's illegal search-and-seizure claim fails, and respectfully **RECOMMENDS** that Deputy Johnson's motion for judgment on the pleadings (ECF No. 34) be **GRANTED** as to this issue.

The undersigned further **FINDS** that Plaintiff's *Amended Complaint* fails to state a claim against any of the remaining Defendants, who have also sought judgment on the pleadings with respect to the search of the storage unit that occurred on or about August 12, 2022. The other named Defendants did not take part in the search and seizure, and were not alleged to be present at the scene. Nor did Plaintiff allege widespread incidents of illegal searches leading up to the August 12, 2022 events. And while Plaintiff makes conclusory and vague assertions regarding conspiracy in the *Amended Complaint*, he plainly fails to set forth plausible allegations of fact in support of a conspiracy claim. Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff's Fourth-Amendment claim based upon the search of the subject storage unit on or about August 12, 2022 be **DISMISSED**.

### E.   <u>**Fabrication of Charges**</u>

Next, Defendants Johnson, Crum, Belcher, and Tucker each move for judgment on the pleadings with respect to Plaintiff's fabrication-of-charges claim against them. (ECF Nos. 35 at 12; 37 at 15; 43 at 15; 45 at 17). In the *Amended Complaint*, Plaintiff alleges in relevant part that, during the June 22, 2022 search of his residence, Deputy Tucker "threaten[ed] to take [Plaintiff] to jail over [Plaintiff's] legal medical marijuana." (ECF No. 21 at 3). According to Plaintiff, Deputies Tucker and Crum then "used the medicine that I legally procured"—ostensibly, Plaintiff's medical marijuana—"and created false charges on me" in abuse of their power and positions as law enforcement officers. *Id.*

Defendants argue that judgment on the pleadings is proper because the allegations in the *Amended Complaint* fail to identify what is false; the allegations are too conclusory to state a plausible claim for relief; the allegations are unsupported by the *Criminal Complaint* which is incorporated into the *Amended Complaint*; and Plaintiff cannot legally prevail on such a claim in light of the fact that he does not allege he was ever convicted as a result of the alleged fabrication. (*See* ECF Nos. 35 at 12; 37 at 15; 43 at 15; 45 at 17) (raising identical arguments).

In response to Defendants' motion, Plaintiff largely points to information outside the scope of the pleadings, including alleged "audio evidence entered by [the] state in [a] criminal case related to this suit by Officer Nick Tucker [which] contradicts Officer Crum's sworn testimony . . . [and] provides direct evidence of perjury[.]" (ECF No. 56 at 4). This information, however, is not tethered to any of the allegations in the *Amended Complaint*. Moreover, Plaintiff fails to address Defendants' arguments regarding the basis for dismissal. (*See* ECF Nos. 56; 58; 60; 61). In his surreply briefing, however, Plaintiff does

argue that "[t]he Supreme Court has consistently held that deliberate fabrication of evidence violates clearly established constitutional rights," and that "[d]eliberate fabrication [is] actionable." (ECF No 70-4 at 1, 4). Notably, Plaintiff does not object to judicially noticing the *Criminal Complaint* that Plaintiff references and incorporates into the *Amended Complaint*.

The undersigned agrees with Plaintiff that a conviction is not a prerequisite for a fabrication-of-charges claim for violation of the Fourteenth Amendment under § 1983. *See Harris v. Town of S. Pines*, 110 F.4th 633, 635 (4th Cir. 2024). The Fourth Circuit expressly held in *Harris* that "a plaintiff who was not convicted of a crime, but was arrested and detained for several months, can still state a Fourteenth Amendment fabrication of evidence claim." *Id*. The Fourth Circuit explained in *Harris* that an individual "experiences a deprivation of liberty when criminal proceedings against him are initiated." *Id*. As a result, "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."

Pursuant to the standard set forth by the Fourth Circuit in *Harris*, it is clear from reviewing the *Amended Complaint* and the *Criminal Complaint* that Plaintiff has not stated a plausible fabrication-of-charges claim in this case. The only relevant factual allegations which are not merely conclusory therein assert that Deputies Tucker and Crum falsified charges by using Plaintiff's *legally-prescribed medical marijuana* to criminally charge and jail him. (*See* ECF No. 21 at 3). However, the *Criminal Complaint* charges Plaintiff with possession of a distribution quantity of marijuana, not a medical

quantity. Specifically, the *Criminal Complaint* alleges that "[t]he total approximate amount of Marijuana" found by law-enforcement officers following the June 22, 2022 search was "around (22 lbs)[.]" (ECF No. 34-2 at 2). Plaintiff does not dispute that he possessed marijuana; nor does he dispute the quantity alleged in the *Criminal Complaint*. West Virginia statute provides that "[r]eceipt of medical cannabis by a patient . . . may not exceed a 30-day supply of individual doses." W. Va. Code § 16A-4-5. The West Virginia Office of Medical Cannabis generally allows a maximum of six ounces per 30-day period. Further, West Virginia statute provides that, "[i]n addition to any other penalty provided by law, any patient . . . who intentionally and knowingly possesses, stores or maintains an amount of medical cannabis in excess of the amount legally permitted is guilty of a misdemeanor[.]" W. Va. Code § 16A-12-3. Under these circumstances, it is entirely unclear what was "false" about the charges in the *Criminal Complaint*.

More important, however, is the fact that the *Criminal Complaint* does not merely charge Plaintiff with marijuana-related offenses. To the contrary, Plaintiff is charged therein with possession of a number of other controlled substances, including "psychedelic mushrooms . . . and a total of (2,910) Neurontin pill[s]," as well as illegal possession of a firearm in violation of W. Va. Code § 61-7-7. (ECF No. 34-2 at 2). In short, even if the allegedly-false marijuana charges had been excluded completely from the *Criminal Complaint*, Plaintiff does not set forth a plausible claim under the circumstances that "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Harris*, 110 F.4th at 635. Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff's fabrication-of-charges claim against the Defendants be **DISMISSED**, and Defendants Johnson, Crum, Belcher, and

Tucker's motion for judgment on the pleadings be **GRANTED** with respect to this issue.[4]

## F.     <u>First-Amendment Retaliation</u>

Next, Officer Belcher argues in her motion for judgment on the pleadings that she is entitled to absolute immunity with respect to her alleged acts in helping obtain a search warrant and complying with a court order. (ECF No. 43 at 6). Plaintiff alleges in the *Amended Complaint* that, after being released following his arrest on the capias, he made a complaint about Officer Belcher and others to Sheriff Clemons. (ECF No. 21 at 4). Plaintiff alleges that Sheriff Clemons "then informed [Officer] Belcher of the complaint I filed against her." *Id.* According to Plaintiff, "in retaliation because I filed [a] complaint, [Officer Belcher] informs Chief Deputy Fauci that I had been acting suspiciously . . . and uses this to help Deputy [] Johnson get a search warrant for the storage unit[.]" *Id.* Plaintiff alleges that he "had permission to go to" the storage unit from Home Confinement Officer Jamie Sparks, but Officer Belcher "never asked my supervising officer James Sparks if I had permission to go." *Id.* Plaintiff concludes that "Officer Johnson then used false information, along with the created information from [Officer] Belcher, and put it on an affidavit to search" the storage unit property. *Id.* Plaintiff alleges that, as a result, "$100,000 worth of collectibles" was damaged, "causing substantial financial loss." *Id.* at 5.

The First Amendment right of free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise

---

[4] Defendant Crum also argues that, "[t]o the extent any of Plaintiff's claims can be construed to rely on [Plaintiff's] allegation . . . that Defendant Crum falsely testified before a grand jury and at pre-trial hearings. . . Defendant Crum is entitled to absolute immunity from any claim based on his testimony." (ECF No. 37 at 15). Defendant Crum fails to explain, however, which if any of Plaintiff's claims are *reliant upon* this allegation. As such, the undersigned **FINDS** that Defendants have waived this argument, without prejudice, for purposes of the subject motions for judgment on the pleadings.

of that right." *Iannacone v. Ellison*, 2:24-cv-00245, 2025 WL 904704, at *5 (S.D.W. Va. Mar. 25, 2025) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). To make out a First Amendment retaliation claim, a plaintiff must allege (1) that he engaged in activity protected by the First Amendment, (2) that a defendant took action to adversely affect his First Amendment rights, and (3) that a causal relationship between the protected activity and a defendant's conduct can be established. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). A retaliation claim is sufficiently made out if a defendant's "actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Md., Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). A plaintiff in a § 1983 action need not show that they were actually deprived of their First Amendment rights, but rather they must show that "the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Id.* (collecting cases).

Construing Plaintiff's allegations liberally in light of his status as a pro-se party, the undersigned **FINDS** that Plaintiff has stated a claim for first-amendment retaliation sufficient to proceed to discovery. Plaintiff plausibly alleges that Officer Belcher took steps in retaliation against Plaintiff after hearing from Sheriff Clemons that Plaintiff complained of misconduct in her procurement of the capias. Here, Plaintiff sufficiently pleads that a person of ordinary firmness would be deterred from exercising their potential First Amendment rights. Contrary to Defendant Belcher's argument, Plaintiff's claims do not arise from her performance of quasi-prosecutorial or quasi-judicial

functions themselves, but from her alleged retaliation. Thus, Plaintiff's allegations are enough to overcome a threshold challenge to the sufficiency of the pleadings. Accordingly, to the extent that Officer Belcher's alleged acts support Plaintiff's claim for first-amendment retaliation, the undersigned respectfully **RECOMMENDS** that her motion for judgment on the pleadings be **DENIED**.

## G.    Unreasonable Seizure

Lastly, Officer Belcher seeks dismissal of Plaintiff's claims against her stemming from Officer Belcher's procurement of a capias for his arrest after Plaintiff failed to report to home confinement following his release on bond. Specifically, Officer Belcher argues in her motion for judgment on the pleadings that she is entitled to absolute immunity with respect to her alleged acts in procuring the capias. (ECF No. 43 at 6). Plaintiff appears to allege in his *Amended Complaint* that, following his arrest on June 22, 2022, he was detained in an unspecified regional jail for approximately twenty days, during which he "fil[ed] multiple grievances for medical attention" but apparently did not receive any treatment. (ECF No. 21 at 4). Ultimately, Plaintiff alleges that he "was released out the back door" of the regional jail "at approximately 2pm" on an unspecified date and informed "that [he] had 5 minutes to get off jail property." *Id.* Plaintiff alleges that, upon his release, he "[was] not allowed a phone call," so he was "forced to walk the 9 miles to the home confinement office in 94 degree heat." *Id.* Plaintiff alleges that he then walked to "Med express [to] seek medical treatment for [his] injuries." *Id.* Plaintiff alleges that he arrived at Med Express "[a]t about 5:30 p.m." *Id.* It appears that Plaintiff was diagnosed with dehydration, a sprained shoulder, and "smashed toe." *Id.* After obtaining "a medical excuse" from the Med Express doctor, Plaintiff alleges that he resumed "walking to home

confinement." *Id.* According to the *Amended Complaint*, the home confinement office was already closed when Plaintiff arrived; Plaintiff alleges that he left the doctor's excuse, as well as a note stating that he "would be there first thing next day[.]" *Id.* Plaintiff alleges that he consulted his attorney the following morning and "explain[ed] how its impossible to walk 9 miles in 2 and half hours[.]" *Id.* Plaintiff's attorney allegedly "confirmed with probation and told me to report to home confinement." *Id.* However, Plaintiff alleges that Officer Belcher "had already procured a capias at 4pm the previous day, 30 minutes before they closed, stating the prosecutor told her to lock me up." *Id.* Plaintiff further alleges that Officer Belcher took steps to procure the capias "[e]ven though she confirmed with the regional jail Lt. Paula Vance what time [Plaintiff] was released and talking to the Dr that treated [Plaintiff's] injuries." *Id.* Plaintiff alleges that Officer Belcher "abused her power to illegally lock me up again" by "obtaining a capias against me despite knowing, after verifying with my doctor and the regional jail, that I had not violated any conditions of my home confinement." *Id.* at 3-4. According to Plaintiff, "[t]his abuse of power led to my wrongful imprisonment for a month, causing significant harm and deprivation of my liberty." *Id.* Plaintiff concludes that "[t]he wrongful imprisonment and the abuse of power by the home confinement officer caused significant emotional distress, including anxiety, depression, and stress." *Id.* at 5.

Based upon these allegations for "wrongful imprisonment," and construing them liberally in light of his pro-se status, the undersigned **FINDS** that Plaintiff asserts a § 1983 claim against Officer Belcher pursuant to the Fourth Amendment, for what amounts to unreasonable seizure. A claim for unreasonable seizure under § 1983 has three elements: that the defendant 1) caused 2) a seizure of the plaintiff under legal process

without probable cause, 3) and that criminal proceedings terminated in the plaintiff's favor. *Warren v. Braswell*, 7:24-cv-233, 2024 WL 3678360, at *3 (E.D.N.C. Aug. 2, 2024) (citing *Thompson v. Clark*, 596 U.S. 36, 44 (2023)).

In her motion for judgment on the pleadings, Officer Belcher implicitly argues that Plaintiff's arrest on the capias was supported by probable cause, and that her procurement of the capias—which was ultimately issued by a judge, not by Officer Belcher herself—constitutes a quasi-judicial function for which she is entitled to absolute immunity. (*See* ECF No. 43 at 6).

Warrants—including the subject capias authorizing Plaintiff's arrest—usually "conclusively determine[ ] the existence of probable cause," but not when an officer "deliberately supplied misleading information that influenced the [judge's or grand jury's] decision." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012). Plaintiff's *Amended Complaint* plausibly sets forth allegations which support a reasonable inference that Officer Belcher had reason to know probable cause was lacking to arrest Plaintiff on the bond violation for failure to appear. Specifically, Plaintiff alleges that Officer Belcher verified with the regional jail the time at which he was released from custody, and confirmed with Plaintiff's doctor that he was treated at Med Express immediately upon his release from the regional jail, yet chose to procure Plaintiff's arrest "despite knowing . . . that I had not violated any conditions of my home confinement." (ECF No. 21 at 3-4). While it is a close question, the undersigned **FINDS** that Plaintiff has asserted sufficient allegations of plausible fact to proceed to discovery. Accordingly, the undersigned respectfully **RECOMMENDS** that Officer Belcher's motion for judgment on the pleadings (ECF No. 43) be **DENIED** as to this issue.

### H.   **Remaining Issues**

####    i.    Qualified Immunity

In their respective motions for judgment on the pleadings, the Defendants seek dismissal of each of Plaintiff's claims against them on the basis of qualified immunity. In support, however, Defendants merely cite generally to the law of qualified immunity, along with one or two vague and conclusory assertions—such as Defendant Tucker's assertion that "Plaintiff has failed to identify any clearly established law that Defendant Tucker violated to support his Fourth Amendment claims, his Eighth Amendment claim, his Fourteenth Amendment claim, or his false charges claim." (ECF No. 45 at 6). (*See also, e.g.*, ECF No. 37 at 19) (setting forth conclusory statements that "Plaintiff's claims are devoid of factual support" and "Plaintiff has failed to identify any clearly established law that Defendant Crum violated to support his Fourth Amendment claims, his Eighth Amendment claim, his Fourteenth Amendment claim, or his false charges claim"); (ECF No. 35 at 14-16) (same); (ECF No. 43 at 15-17) (same).

Quite frankly, Defendants' "arguments" are far too conclusory, sparse, and devoid of legal analysis to be considered fairly raised. Defendants make virtually no effort to tether the two-element inquiry for qualified immunity to the specific factual allegations and circumstances of this case. It is well-established that "a claim of qualified immunity can be waived if not squarely presented to the district court[.]" *Diamond v. Odedere*, 1:22-cv-287, 2024 WL 5040637, at *3 (M.D.N.C. Dec. 9, 2024) (quoting *Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000)). The undersigned **FINDS** that, under the circumstances, Defendants have waived the issue for purposes of their subject motions. However, the undersigned's finding is without prejudice should Defendants choose to properly raise the

issue if and when it may be appropriate in the further course of this litigation. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' motions for judgment on the pleadings be **DENIED** on this issue.

      ii.     <u>Personal Jurisdiction – Officer Belcher</u>

Lastly, Officer Belcher raises the argument that dismissal of Plaintiff's claims against her is proper because service was not effected, and therefore the Court may not exercise personal jurisdiction over her. (ECF No. 42). After Officer Belcher filed her motion, she was served on October 15, 2024 by the U.S. Marshals Service. (*See* ECF No. 52). Accordingly, the Court rejects Officer Belcher's personal-jurisdiction argument as **MOOT**.

## IV.   <u>**RECOMMENDATION**</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** as follows:

(1)    Defendant Logan County K9 Deputy Timothy C. Johnson's *Motion for Judgment on the Pleadings* (ECF No. 34) be **GRANTED**, as set forth hereinabove;

(2)    Defendant Logan County Deputy Corporal Coty Crum's *Motion for Judgment on the Pleadings* (ECF No. 36), Defendant Logan County Home Confinement Officer Marie Belcher's *Motion for Judgment on the Pleadings* (ECF No. 42), and Defendant Logan County Deputy Corporal Nick Tucker's *Motion for Judgment on the Pleadings* (ECF No. 44) be **GRANTED IN PART** and **DENIED IN PART**, as set forth hereinabove;

(3)    Plaintiff's § 1983 claims against the named Defendants based upon unspecified violations of the Eighth Amendment be **DISMISSED**;

(4)    Plaintiff's § 1983 claims against the named Defendants based upon

unspecified violations of the Fourteenth Amendment be **DISMISSED**;

(5)  Plaintiff's § 1983 claims against the named Defendants for illegal search and seizure on or about August 12, 2022 be **DISMISSED**;

(6)  Plaintiff's § 1983 claims against the named Defendants for fabrication of charges in violation of the Fourteenth Amendment be **DISMISSED**;

(7)  Plaintiff be permitted to proceed to discovery with respect to his § 1983 claim for excessive force on June 22, 2022, in violation of the Fourth Amendment against Defendant Tucker, but such claim be **DISMISSED** with respect to the remaining Defendants;

(8)  Plaintiff be permitted to proceed to discovery with respect to his § 1983 claim for illegal search and seizure on June 22, 2022, in violation of the Fourth Amendment against Defendants Tucker and Crum, but such claim be **DISMISSED** with respect to the remaining Defendants;

(9)  Plaintiff be permitted to proceed to discovery with respect to his § 1983 claim for First-Amendment retaliation against Defendant Officer Belcher; and

(10)  Plaintiff be permitted to proceed to discovery with respect to his § 1983 claim for unreasonable seizure in violation of the Fourth Amendment against Defendant Officer Belcher.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file

with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection; further, pursuant to Rule 6(d), any unrepresented party shall have an additional three (3) days after this fourteen-day period if service is made via U.S. Mail. Extension of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Volk, and to each opposing party—except that, if any opposing party is represented by counsel, that party's copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, and to transmit a copy to counsel of record and any unrepresented party.

ENTERED:   June 20, 2025

Dwane L. Tinsley
United States Magistrate Judge